589 A.2d 675

**Christos PAPPAS, Appellant,**

**v.**

**ZONING BOARD OF ADJUSTMENT OF the CITY OF PHILADELPHIA, Appellee,**

**Spring Garden Civic Association, Intervenor.**

Supreme Court of Pennsylvania.

Argued Jan. 14, 1991.

Decided April 10, 1991.

Malcolm W. Berkowitz, Philadelphia, for appellant.

Marjorie Stern Jacobs, Philadelphia, Divisional Deputy City Solicitor, for Zoning Bd. of Adjustment for the City of Philadelphia.

Stanley R. Krakower, Philadelphia, for intervenor—Spring Garden Civic Ass'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented in this case is whether, according to Pennsylvania zoning law, the change in the use of property, to which a lawful nonconforming use has attached, from a sandwich shop/restaurant to a full service pizza restaurant constitutes the expansion of the nonconforming use rather than the abandonment of the nonconforming use for a new and different use.

Appellant, Christos Pappas, was a hot dog vendor in the City of Philadelphia for over forty years. On January 16, 1981, Pappas purchased the property and the building at 532 North 15th Street in Philadelphia which at that time had a sandwich shop/restaurant on the first floor and four apartments on the upper floors.[1] Pappas continued to operate the sandwich shop/restaurant for approximately three months. Tenants remained in the apartments until May of 1981, at which time their leases were not renewed. With the premises vacant, Pappas began to renovate the building including the restaurant. Pappas' intention was to expand the restaurant from a sandwich shop which served primarily take-out food to high school students to a full service pizza restaurant with seating for forty customers.

Although the restaurant was not in operation for three years, from March of 1981 until May of 1984, Pappas continued to renovate the premises during this period. Pappas contracted for the installation of new plumbing, lights, counter space and seating. In addition, Pappas, himself, worked on renovations to the property. On December 8, 1982, the City of Philadelphia Department of Licensing and Inspection (L & I) inspected the property and cited Pappas with several building code violations. On August 20, 1982, Pappas obtained a building permit from L & I for construction work to remedy these violations. On October 26, 1983,

---

1. The property, originally zoned "C–2 commercial" was rezoned "R–10 residential" in 1974. The use of the first floor of the building as a sandwich shop/restaurant was a lawful nonconforming use existing at the time of purchase by Pappas.

Pappas was again required to obtain a building permit for construction work to bring the building into compliance due to additional violations discovered by L & I.[2]

Renovations to the building continued and in 1984 Pappas obtained a $50,000 loan to meet a bid of $61,318 made by a food service consulting and commercial kitchen design company for the installation of kitchen equipment, appliances, and refrigeration. Shortly thereafter, on May 11, 1984, Pappas received notification from L & I that the building permits previously issued in August, 1982, and October, 1983, had been revoked. The letter stated that the property had lost its nonconforming use status because the restaurant was not in operation for a period of three years.

Pappas appealed the revocation of the permits to the Zoning Board of Adjustment of the City of Philadelphia (the Board). After making findings of fact, the Board concluded that "the Applicant [Pappas] failed to present the evidence required to establish that the non-conforming use was discontinued for a period of three consecutive years or less" and denied Pappas' appeal. (Findings of Fact and Conclusions of Law of The Board, September, 1984, at p. 14.) The Philadelphia Court of Common Pleas affirmed. On appeal, the Commonwealth Court affirmed holding that although the Board erred in placing the burden of proof on Pappas to disprove discontinuance, Pappas had abandoned his original nonconforming use (a sandwich shop) for a new and different use (a full service restaurant). —— Pa.Cmwlth. ——, 557 A.2d 469. We granted Pappas' petition for allowance of appeal and we, now, reverse.

As a matter of Pennsylvania zoning law, "the owner of property to which a lawful nonconforming use has attached enjoys a vested property right ...". *Gross v. Zoning Board of Adjustment of the City of Philadelphia*, 424 Pa. 603, 607, 227 A.2d 824, 827 (1967). Additionally, under the applicable zoning ordinance (the Philadelphia Code) the

**2.** Interestingly, both of the building permits issued by L & I stated that a zoning permit for the property was not required.

right to continue a nonconforming use runs with the property:

### § 14–104. Non–Conforming Structures and Uses

\* \* \* \* \* \*

(1) *General.* Any structure, or the use of any land or structure or portion of a structure, which was a non-conforming structure or use under the terms of the zoning ordinance of August 10, 1933, as amended, shall continue to be a non-conforming structure or use, which may continue at the same location, but shall be subject to the provisions, limitations and restrictions of this Section governing non-conforming structures and uses.

While a change in ownership of the property does not affect its nonconforming use status, under the Code, the discontinuance of the use for a statutory period extinguishes such status:

(5) Discontinued Use.

(b) A non-conforming use when discontinued for a period of more than three consecutive years shall be considered abandoned and may not be resumed, and any subsequent use of the land or structure must comply with the use requirements of the district in which it is located. . . .

Phil.Code § 14–102(5)(b).

 This Court has held, however, that abandonment of a nonconforming use cannot be established by mere proof of a failure for a time to use the property or of a temporary use of the property not inconsistent with an intention to use it for the original purpose. There must be evidence of intention to abandon. *Appeal of Township of Upper Darby*, 391 Pa. 347, 138 A.2d 99 (1958) citing, *Haller Baking Company's Appeal*, 295 Pa. 257, 145 A. 77 (1928). *See also, Smith v. Board of Zoning Appeals of the City of Scranton*, 74 Pa.Cmwlth. 405, 459 A.2d 1350 (1983) (protestant's evidence merely showed nonuse of premises while property owner made renovations and did not prove intent to abandon nor actual abandonment of nonconforming use.)

The burden of proof of abandonment is on the party asserting the same. *Faith Presbyterian Church v. Bensalem Township Zoning Hearing Board,* 114 Pa.Cmwlth. 107, 538 A.2d 135 (1987).

■ In this case the Board erred in placing the burden of proof on Pappas to disprove discontinuance. The record clearly supported the fact that Pappas intended to use the property as a restaurant. (Cmwlth.Ct.Op. at pp. 13, 19). In determining that the restaurant proposed by Pappas constitutes a new and different use, the Commonwealth Court ignored the doctrine of natural expansion which permits a landowner to develop or expand a business as a matter of right notwithstanding its status as a nonconforming use. *Chartiers Twp. v. W.H. Martin, Inc.,* 518 Pa. 181, 542 A.2d 985 (1988). In *Chartiers,* we stated that "once it has been determined that a nonconforming use is in existence, an overly technical assessment of that use cannot be utilized to stunt its natural development and growth." *Id.* 518 Pa. at 188, 542 A.2d at 988.

■ In this case the Commonwealth Court utilized an overly technical distinction between eat-in and take-out restaurants found in the Philadelphia Code to conclude that Pappas abandoned the original use for a new and different use. That portion of the Code distinguishes between eat-in restaurants, which are a use permitted without a special certificate in a "C-2" commercial district and take-out restaurants, which are a use permitted only by special certificate.[3] The purpose of that portion of the Code is to restrict

---

**3.** The relevant provisions of the Philadelphia Code state as follows:

§ 14-303. "C-2" Commercial District.

(2) *Use Regulations—Without Certificate.* Subject to the provisions of (1) above, where applicable, the specific uses permitted in this district shall be the erection, construction, alteration or use of buildings and/or land for:

\*　　\*　　\*　　\*　　\*　　\*

(*o*) Restaurant (see 3 (p) below), cafe and soda or ice cream fountain, or catering, including outdoor dining areas; provided, that the preparation and sale at retail of food to be consumed off

take-out restaurants which create increased loitering, vehicular traffic, litter and congestion by requiring certification. This distinction in the Code has no application to the determination of whether abandonment of a nonconforming use of property as a restaurant has occurred.

The record in this case shows that the original sandwich shop/restaurant had limited counter seating and sold primarily take-out food to high school students. The record also indicates that Pappas intended to expand to a full service pizza restaurant with seating for forty customers and that take-out service would be limited to less than 25% of the gross floor area. We conclude that under these facts the change from the sandwich shop/restaurant to a full service pizza restaurant is not a change to a new and different use but, rather, the expansion of the prior nonconforming use.

The order of the Commonwealth Court is reversed and the Zoning Board of Adjustment of the City of Philadelphia is instructed to reinstate the building permits previously issued by the Department of Licensing and Inspection.

ZAPPALA, J., filed a concurring opinion.

NIX, C.J., concurred in the result.

McDERMOTT, J., dissents in the result without an opinion.

premises shall be permitted as an accessory use subject to (2)(s) below;

\*　　\*　　\*　　\*　　\*　　\*

(s) Accessory uses, customarily incidental to any of the above permitted uses; provided, that the accessory use does not occupy more than 25% of the gross floor area, ...

(3) *Use Regulations—With Certificate.* The following uses will be permitted in this district only if a Zoning Board of Adjustment certificate, as hereinafter provided, is obtained,....

(p) Restaurant which serves patrons who remain in their automobile; restaurant, cafe or soda and ice cream fountain where over 25% of the floor area is used for the preparation and sale at retail of food to be consumed off premises; and, restaurant, cafe or soda and ice cream fountain which dispenses food through a window or aperture which opens onto the sidewalk or public arcade area; ....

ZAPPALA, Justice, concurring.

I concur in the result reached by the majority. I write separately to emphasize the distinction between the burden of proof placed upon the party asserting abandonment of a non-conforming use and the burden of persuasion placed upon the party challenging the claim of abandonment when a zoning code provision governing discontinued use has been adopted.

In this case, Philadelphia Code § 14–102(5)(b) provided that a non-conforming use shall be considered abandoned and may not be resumed when discontinued for a period of more than three consecutive years. Without a provision restricting the reestablishment of a use after discontinuance for a designated time, the party asserting abandonment must introduce evidence to establish (1) an intent to abandon the use, and (2) that the use was abandoned. A discontinuance provision, such as § 14–102(5)(b), creates a presumption of the intent to abandon the use by the expiration of the designated time.

Absent any evidence to the contrary, the lapse of the designated time will be sufficient to establish an intent to abandon the use. The majority states that abandonment cannot be established by mere proof of a failure for a time to use the property and that there must be evidence of intention to abandon. (At 677.) The statement is confusing. Failure to use the property for a designated time provided under a discontinuance provision *is* evidence of the intention to abandon. The burden of persuasion then rests with the party challenging the claim of abandonment. If evidence of a contrary intent is introduced, the presumption is rebutted and the burden of persuasion shifts back to the party claiming abandonment.

What is critical is that the intention to abandon is only one element of the burden of proof on the party asserting abandonment. The second element of the burden of proof is actual abandonment of the use for the prescribed period. This is separate from the element of intent. *See, Smith v.*

*Board of Zoning Appeals of the City of Scranton,* 74 Pa.Cmwlth. 405, 459 A.2d 1350 (1983).

I am persuaded that the evidence introduced in this case failed to establish abandonment of the use by the Appellant and agree with the majority that the order of the Commonwealth Court be reversed.