601 A.2d 433

**Thomas W. LIMLEY, Appellant,**

v.

**ZONING HEARING BOARD OF PORT VUE BOROUGH**
and Borough of Port Vue and Edward J. Opatrney
and Eldo Bisacca, Appellees.

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 1991.
Decided Dec. 18, 1991.

214

Thomas G. Wojton, for appellant.
Walter F. Baczkowski, for appellees.

Before CRAIG, President Judge, PELLEGRINI, J., and BARRY, Senior Judge.

CRAIG, President Judge.

Thomas W. Limley appeals from an order of Judge Alan S. Penkower of the Court of Common Pleas of Allegheny County affirming a decision of the Zoning Hearing Board of the Borough of Port Vue (board) which revoked an occupancy permit issued to Limley. The permit would have allowed Limley to use a one-story building, which previously housed the Blue Rock Social Club (Blue Rock use), as a public restaurant and bar. We affirm.

The issues in this case are whether the trial court should have conducted a de novo review of the *merits* of the case after taking additional evidence only upon the issue of the timeliness of the objector's appeal, whether the trial court erred in finding that the objector had filed a timely appeal of the issuance of the permit, and whether the trial court erred (1) in affirming the board's conclusion that the restaurant and bar proposal was not a continuation of the previous nonconforming use, and (2) in deciding that Limley is not entitled to the restaurant and bar occupancy based on a theory of vested rights.

The factual history of this case is taken from the trial court's opinion containing its own findings on the issue of the timeliness of the objector's appeal and its affirmance of the board's findings of fact and conclusions of law on the merits.

On May 24, 1988, the building inspector of Port Vue issued an occupancy permit to Limley to convert the Blue Rock use into a public restaurant and bar. The property is located in a B–Residence District under the Port Vue Zoning Ordinance (ordinance).

On July 20, 1988, Edward W. Opatrny (objector) filed a written protest to the board claiming that the township improperly issued the permit because the proposed commercial use of the structure was not a permitted use in the B–

Residence District and the proposed use lacked the required number of parking spaces under the ordinance.

On August 3, 1988, the board conducted a hearing and on August 10, 1988, the board publicly announced its decision and revoked the occupancy permit, finding that the proposed use was not a continuation of the property's previous non-conforming use.

The board found that the Blue Rock use had been a nonconforming use because the club did not fit into the ordinance's provision listing "clubs" as permitted uses in the B–Residence District. The relevant provision of the ordinance, art. III, § 7.7 reads:

Section 7: Within any "B" Residence District no building, structure or premises shall be used or arranged or designed to be used, except for one or more of the following uses:

PERMITTED USES:

. . . .

7—Clubs, lodges, social and community center buildings, except those in which a chief activity is a gainful service or activity usually conducted as a business.

Because Blue Rock served alcohol and food to its members, the board stated that Blue Rock engaged in an activity usually conducted by a business. Because the club conducted that activity before the enactment of the ordinance, the board therefore classified its activity as a legal nonconforming use.

On September 28, 1988, Limley filed an appeal to the Court of Common Pleas of Allegheny County, arguing that the objector had filed an untimely appeal from the issuance of the occupancy permit, that the proposed use was a continuation of a prior non-conforming use, and that Limley had acquired a right to use the property under the theory of vested rights.

After appealing to the common pleas court, Limley filed a motion to take additional testimony. As noted above, the trial judge granted the motion only with respect to the issue

of the timeliness of the objector's appeal. On April 14, 1989, the trial judge conducted an evidentiary hearing on that issue.

On December 3, 1990, the trial court issued its opinion and order. In its opinion, the trial court made a finding that the objector filed a timely appeal and affirmed the board's decision holding (1) that Limley's proposed use was not a continuation of a non-conforming use and (2) that Limley did not acquire entitlement to the commercial restaurant and bar through a theory of vested rights.

Limley then appealed to this court, raising the four issues listed above.

## 1. Timeliness of Objector's Appeal

■ At the de novo hearing before the trial court, the trial court adopted the objector's testimony before the board and limited the scope of the de novo hearing to sections 1, 4 and 7 of Limley's motion to present additional evidence. Those sections may be summarized as follows.

The trial court limited the evidence to: Whether the borough's secretary, also the objector's sister, informed the objector about the occupancy permit, and if so, when she gave such information; whether borough officials told the real estate agent who sold the club to Limley's landlord that the permit was valid; and whether the borough solicitor recommended to the mayor that the township approve Limley's permit.

Section 914.1 of the MPC, 53 P.S. 10914.1, states, in relevant part:

Section 914.1. Time Limitations.—(a) No person shall be allowed to file any proceeding with the board later than 30 days after an application for development, preliminary or final, has been approved by an appropriate municipal officer, agency or body if such proceeding is designed to secure reversal or to limit the approval in any manner unless such person alleges and proves that he had no

notice, knowledge, or reason to believe that such approval had been given.

Limley argues that the objector had actual notice well before July of 1988, because the objector lived one hundred feet from the property and drove by the property on a daily basis, the objector's sister was the borough secretary and knew of the permit, and Limley cleared debris from empty lots adjacent to the club on the last Sunday of May, 1988.

At the hearing before the trial court, the secretary testified that she knew that the zoning officer approved the permit on May 24, 1988, but that she did not inform her brother of this information. She testified that she first learned of her brother's interest in the permit around July 1, 1988. The trial court stated, and we agree, that there was no evidence that she informed her brother about the issuance of the permit earlier than July 1, 1988.

Also, the trial court stated, and we agree, that the fact that Limley cleared debris from an adjacent lot is not controlling. The objector testified at the hearing before the trial court that he thought the owner of the lot was merely cleaning debris from the lot because residents had dumped debris there in the past. Additionally, the trial court stated that the lot was not part of the club's property and there was no reason for an observer to connect Limley's actions on the lot with his acquiring an occupancy permit.

Furthermore, the objector stated at the hearing before the board that he did not have actual notice of the occupancy permit until July 1, 1988. The objector stated:

Q. Mr. Opatrny, when did you first learn or come to know that the subject property, and by subject property in my questions I'm referring to the property at 1716–18 Gray Street, when did you first come to learn or know that the subject property had been approved for occupancy as a lounge and restaurant?

A. Approximately July 1, give or take a day.

. . . .

Q. At any time did you receive any written notice as to the fact that an application for an occupancy permit was made or a decision on that application was made?

A. No.

. . . .

Q. Did you at any time prior to May 24, 1988 or at any time thereafter, notice any posting of the subject property as to the filing of any application for an occupancy permit?

A. No.

Q. Were there any notices posted on any of the telegraph poles in the immediate neighborhood?

A. No.

Q. To the best of your knowledge, were there any newspaper notifications of the fact an occupancy permit was applied for or later approved?

A. No.

Q. Prior to July 1, was there any activity in or about the subject property that would have led you to believe there was any intended change of use thereof?

A. No.

Q. You have testified that on or about July 1, you became aware of the fact that an occupancy permit had been applied for or something of that sort, can you explain to the Board how you came to learn of that?

A. There was an increased activity down there. There was not any noticeable activity for several months. I started to notice activity there so I inquired at the borough building here and was notified that an occupancy permit was issued.

Because the objector testified that he did not have actual notice of the permit until July 1, 1988, and the record supports the objector's position, the trial court did not commit an abuse of discretion in finding that the objector's appeal filed July 20, 1988, was timely.

## 2. Standard of Review as to the Merits

■ Limley argues that the trial court should have exercised its de novo standard of review regarding the merits of this case because the trial court conducted a de novo review of the issue of whether the objector filed a timely appeal in this matter.

Our standard of review of a decision of a trial court in a zoning case, where the trial court has taken new evidence, is whether the trial court committed an abuse of discretion or error of law. *Metzger v. Zoning Hearing Board of the Township of Warrington*, 85 Pa.Commonwealth Ct. 301, 481 A.2d 1234 (1984).

■ When the trial court does not take additional evidence in a zoning case, our standard of review is whether the zoning board committed an abuse of discretion or an error of law. *Board of Supervisors of Upper Southampton Township v. Zoning Hearing Board of Upper Southampton Township*, 124 Pa.Commonwealth Ct. 103, 555 A.2d 256 (1989).

■ Section 1005–A of the Pennsylvania Municipalities Planning Code (MPC)[1] states:

If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence, provided that appeals brought before the court pursuant to section 916.1 shall not be remanded for further hearings before any body, agency or officer of the municipality. If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence

1. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 11005–A. Section 1005–A was added to the Act by § 101 of the Act of December 21, 1988, P.L. 1329.

or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

Thus, the MPC states that the trial court may take additional evidence, but is silent on whether the trial court must conduct a de novo review of the *entire* case in a situation like that presented here.

*Amerikohl Mining, Inc. v. Zoning Hearing Board of Wharton Township*, 142 Pa.Commonwealth Ct. 249, 597 A.2d 219 (1991) is analogous to the present case. In *Amerikohl*, a mining company appealed to a trial court from a decision of the Zoning Hearing Board of Wharton Township denying Amerikohl's application for a special exception.

Amerikohl raised several issues on appeal to the trial court, including whether two of the three zoning board members were biased. Amerikohl filed a motion for leave to present additional evidence, and the trial court granted the order but only with respect to the issue of bias. The trial court then issued a decision in which it made its own findings regarding the issue of bias and affirmed the rest of the board's opinion.

Amerikohl appealed to this court, raising as one of its issues whether the trial court erred in not conducting a de novo review of the entire case and making its own findings of fact on the merits of the case.

This court, in *Amerikohl*, stated:

[T]he evidence that was taken before the trial court would not compel the trial court to hear and decide anew the merits of the underlying case.... None of this evidence goes to the merits of Amerikohl's application for a special exception. All of the additional evidence, as was stipulated, concerned only the issue of bias, did not relate

to any zoning or planning question in the case, nor did it relate to any issue considered by the Board. We therefore hold that the evidence of bias offered by Amerikohl is not the type of additional evidence that requires the trial court under Section 1005–A of the MPC to make its own findings of fact on the underlying merits.

*Amerikohl,* 142 Pa.Commonwealth Ct. at pp. 253–254, 256, 257, 597 A.2d at pp. 221, 222, 223.

The present case is distinguishable from *Amerikohl* only in that the board in this case did make its own findings regarding the timeliness of the objector's appeal; however, *Amerikohl* is determinative in this case because the evidence submitted to the trial court in this case consisted only of evidence regarding the issue of the timeliness of the objector's appeal and did not relate to any zoning or planning question.

Therefore, our standard of review of the trial court's finding that the objector did not file an untimely appeal is whether the trial court committed an abuse of discretion or an error of law, and our standard of review of the remaining issues is whether the board committed an abuse of discretion or an error of law.

### 3. Proposed Use as a Continuation of Nonconforming Use

■ Limley argues that the board committed an error of law and abuse of discretion when it found that Limley's proposed conversion of the Blue Rock into a restaurant and bar facility was not a continuation of the nonconforming use.

Specifically, Limley argues that because the board found that the Blue Rock was a nonconforming use because it served alcohol and food, his proposed restaurant and bar, to do the same, would therefore be a continuation of the nonconforming use.

To qualify as a continuation of a nonconforming use, the proposed use must be similar to that of the previous owner.

*Bevans v. Township of Hilltown,* 72 Pa.Commonwealth Ct. 227, 457 A.2d 977 (1983). In determining whether the nonconforming use and the proposed use are the same "we must look to the applicable zoning ordinance structure as our chief guide with respect to how uses are categorized for the particular municipality." *Gustin v. Zoning Hearing Board of Sayre Borough,* 55 Pa.Commonwealth Ct. 410, 412, 423 A.2d 1085, 1086 (1980).

The ordinance permits restaurants only in commercial districts and permits "Clubs" in B–Residential Districts. Under the ordinance, a change from a club to a restaurant clearly involves a different use and would not be a continuation of the former use. However, the board designated the Blue Rock as a nonconforming use because it did *not* fit within the ordinance's definition of a social club. Therefore, the analysis turns on whether the proposed restaurant and bar differed from the Blue Rock use, as nonconforming use.

At the hearing before the board, the former president of the Blue Rock testified that the Blue Rock served alcohol and food to its members, that on weekdays the Blue Rock operated from 7:00 p.m. to 2:00 a.m., on weekends, from 3:00 p.m. to 3:00 a.m., that occasionally the Blue Rock employed a band, and out of 160 members, approximately half lived in the borough but only twenty lived within walking distance. The board also heard testimony from residents who objected to the proposed use because of perceived traffic and parking concerns and an influx of "outsiders."

The board concluded from this testimony that the restaurant and bar proposal would be different from the nonconforming use of the Blue Rock because the club was a not-for-profit private social club that catered to its members and not the public. The board stated that a restaurant and bar facility would attract greater numbers of people to a residential community and that the traffic and parking problems associated with a restaurant and bar facility would be a change from the club's former use.

Limley argues that the board's conclusion, that the uses were different, is not supported by substantial evidence.

However, although the ex-president of the Blue Rock testified that the activities of the Blue Rock included serving food and alcohol to its members, and although the board did not classify the Blue Rock as a permitted club because of those bar and food service activities, Limley's commercial restaurant and bar business, open to the public, is nevertheless distinctively different from an activity which was in fact a club, although one which serves food and drinks to its members.

This case is similar to *Price v. Zoning Hearing Board of Bradford Township*, 116 Pa.Commonwealth Ct. 567, 542 A.2d 216 (1988), where this court held that a conversion of a former social club into a restaurant and bar was not a continuation of a prior non-conforming use. Although the prior use in Price was classified as a club and the prior use here was denied that label, the principle of *Price* is instructive, and the board and trial court here were correct in concluding that Limley's commercial use catering to the public is qualitatively, as well as quantitatively, different from a use in which only members are served.

### 4. Vested Right

Limley also argues that he is entitled to the occupancy permit on a theory of vested right. A property owner acquires vested rights to use his property contrary to land use laws in effect, if the property owner shows

1. his due diligence in attempting to comply with the law;
2. his good faith throughout the proceedings;
3. the expenditure of substantial unrecoverable funds;
4. the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit; and
5. the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

*Petrosky v. Zoning Hearing Board of Upper Chichester,*
485 Pa. 501, 507, 402 A.2d 1385, 1388 (1979).

■ In this case, Limley satisfied the first, second and fourth requirements; however, there is an issue as to whether Limley met the third criterion, which is whether Limley spent substantial unrecoverable funds on the property.

Limley argues that his replacement of the roof at the Blue Rock and his closing of his former restaurant in reliance on the occupancy permit constituted substantial unrecoverable funds spent in reliance of the occupancy permit.

However, at the hearing before the board, Limley did not offer the dollar amount he spent on the Blue Rock's leaky roof, nor did he offer the dollar amount of his lost profits from the closing of his previous business; hence, the board and trial court properly concluded that Limley did not present evidence of substantial, unrecoverable funds.

Accordingly, Judge Penkower's sound decision is affirmed.

### ORDER

NOW, December 18, 1991, the order of the Court of Common Pleas of Allegheny County, dated December 3, 1990, at No. SA 2034–88, is affirmed.

PELLEGRINI, J., dissents.