625 A.2d 54

Thomas W. LIMLEY, Appellant,

v.

## ZONING HEARING BOARD OF PORT VUE BOROUGH
and Borough of Port Vue and Edward J. Opatrny
and Eldo Bisacca, Appellees.

Supreme Court of Pennsylvania.

Submitted March 8, 1993.

Decided May 27, 1993.

Reargument Denied July 6, 1993.

John A. Tumolo, Pittsburgh, for appellant.

Duane A. Dudik, Scoratow & Dudik, Poughkeepsie, for Zoning Hearing Bd. of Port Vue Borough and Borough of Port Vue.

John J. Meyers, Liddle & Adams, McKeesport, for Edward Opatrny.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal, by allowance, from an order of the Commonwealth Court, 601 A.2d 433, which affirmed an order of the Court of Common Pleas of Allegheny County affirming a decision of the Zoning Hearing Board (Board) of the Bor-

ough of Port Vue. The Board's decision revoked an occupancy permit issued to the appellant, Thomas W. Limley. The permit would have enabled appellant to open a public restaurant and bar in a building that previously housed a non-profit private club. The factual background of the case is as follows.

In May of 1988, a building inspector in the Borough of Port Vue issued an occupancy permit allowing property formerly known as the Blue Rock Social Club (Blue Rock Club) to be converted into a public restaurant and bar. The property is located in an area which, under the applicable zoning ordinance, is classified as residential. In July of 1988, Edward J. Opatrny, appellee herein, filed an objection alleging that the permit was improperly issued. Opatrny asserted that the proposed use was a commercial one that was not permitted in an°area zoned as residential. The Board conducted a hearing, and, in August of 1988, revoked the occupancy permit.

The Board found that the Blue Rock Club was a nonconforming use because the club was not encompassed by a provision in the zoning ordinance listing "clubs" as permitted uses in residential areas. The ordinance provides, in relevant part, as follows:

SECTION 7: Within any "B" Residence District no building, structure or premises shall be used, or arranged or designed to be used, except for one or more of the following uses:

PERMITTED USES:

. . . .

7—Clubs, lodges, social and community center buildings, *except those in which a chief activity is a gainful service or activity usually conducted as a business.*

(Emphasis added). On the basis that a chief activity of the Blue Rock Club was the sale of food and alcoholic beverages to its members and guests, such being an activity usually conducted as a business, the Board determined that the club was not a permitted use. Nevertheless, inasmuch as the club conducted its activities before the enactment of the ordinance, the Board concluded that the club constituted a legal noncon-

forming use. The proposed use of the premises as a public restaurant and bar was not, however, viewed by the Board as a continuation of the existing use. Rather, it was deemed to be a new use which was prohibited by the zoning ordinance. Accordingly, the occupancy permit was revoked.

An appeal was taken to the Court of Common Pleas, and the revocation of the occupancy permit was affirmed. An appeal was then taken to the Commonwealth Court, and the order of the lower court was affirmed. The present appeal ensued. We reverse.

The applicable standard of review is well settled. Where, as in this case, the Court of Common Pleas has not taken additional evidence,[1] appellate review is limited to a determination of whether the Board committed a manifest abuse of discretion or an error of law. *PA Northwestern Distributors, Inc. v. Zoning Hearing Board,* 526 Pa. 186, 189, 584 A.2d 1372, 1373 (1991). *Appeal of Miller,* 511 Pa. 631, 635, 515 A.2d 904, 906 (1986). Under this standard, the Board's decision prohibiting the club from being used as a public restaurant and bar cannot be sustained.

To qualify as a continuation of an existing nonconforming use, a proposed use must be sufficiently similar to the nonconforming use as not to constitute a new or different use. *Hanna v. Board of Adjustment,* 408 Pa. 306, 313–14, 183 A.2d 539, 543–44 (1962); *Upper Providence Township Appeal,* 414 Pa. 46, 52, 198 A.2d 522, 525 (1964); *Upper St. Clair Township Grange Zoning Case,* 397 Pa. 67, 72–73, 152 A.2d 768, 771–72 (1959). The proposed use need not, however, be identical to the existing use; rather, similarity in use is all that is required. *Pappas v. Zoning Board of Adjustment,* 527 Pa. 149, 154–55, 589 A.2d 675, 677–78 (1991) (pizza restaurant with seating for forty customers was similar to existing use as sandwich shop that had very limited customer seating and sold primarily take-out food); *Upper Providence Township Appeal,*

1. The trial court received evidence regarding the timeliness of Opatrny's objection to issuance of the occupancy permit, but it did not receive evidence relating to the zoning issues decided by the Board.

supra (proposed day camp and swim club were similar to existing use as amusement park); *Mutimer Co. v. Wagner*, 376 Pa. 575, 103 A.2d 417 (1954) (proposed machinery sales office was similar to existing use as real estate sales office); *Veltri Zoning Case*, 355 Pa. 135, 49 A.2d 369 (1946) (restaurant selling intoxicating liquors was not sufficiently similar to existing use as dairy store).

In determining what is a proper continuation of a nonconforming use, to wit, whether a proposed use bears adequate similarity to an existing nonconforming use, the doctrine of natural expansion must be given effect. As stated in *Pappas v. Zoning Board of Adjustment*, 527 Pa. at 154, 589 A.2d at 677,

> [T]he doctrine of natural expansion . . . permits a landowner to develop or expand a business as a matter of right notwithstanding its status as a nonconforming use. *Chartiers Twp. v. W.H. Martin, Inc.*, 518 Pa. 181, 542 A.2d 985 (1988). In *Chartiers*, we stated that "once it has been determined that a nonconforming use is in existence, an overly technical assessment of that use cannot be utilized to stunt its natural development and growth." *Id.* 518 Pa. at 188, 542 A.2d at 988.

In *Pappas*, we held that a proposed eat-in restaurant was a natural expansion of a nonconforming use as a sandwich shop serving primarily take-out food, and that the proposed restaurant did not, therefore, constitute a new and different use. Similarly, in *Chartiers Township v. W.H. Martin, Inc.*, 518 Pa. 181, 542 A.2d 985 (1988), we held that, under the doctrine of natural expansion, a nonconforming use as a landfill could expand its daily intake of trash without becoming a new and different use. We reaffirmed the principle that a nonconforming use cannot be limited to the precise magnitude thereof which existed on the date when the zoning ordinance was adopted and, further, rejected overly technical approaches to the assessment of nonconforming uses. *Id.* at 186–88, 542 A.2d at 988–89. Accord *Pappas*, supra.

■   Applying these principles to the present case, it is clear that the Board erred in denying permission for the Blue Rock Club to be used as a public restaurant and bar. The proposed use was similar to, and a natural expansion of, the food and beverage facility that constituted the existing nonconforming use.

In upholding the revocation of the occupancy permit for the proposed restaurant and bar, the Commonwealth Court reasoned that a use which caters to the public is "qualitatively as well as quantitatively different" from a use which serves members of a private club. Ostensibly, a private club selling food and beverages may not be identical to a public facility engaged in the same enterprise. Nevertheless, as heretofore discussed, it is not necessary that the proposed use be identical to the existing one; rather, similarity is what is required.

At the hearing before the Board, there was testimony regarding the activities and clientele of the Blue Rock Club. The testimony revealed great similarity between the club's use and the use to which the property would be put as a public restaurant and bar.

It was because a chief activity of the Blue Rock Club was the sale of food and beverages that it was classified as a nonconforming use. As a public restaurant and bar, its chief activity would be the same.

The club was operated on weekdays from 7:00 p.m. to 2:00 a.m. and on weekends from 3:00 p.m. to 3:00 a.m. The proposed public restaurant and bar would also operate on a daily basis but would be required, under Liquor Control Board regulations governing public lounges, to close at 2:00 a.m. rather than 3:00 a.m.

The club sold alcoholic beverages, sandwiches, fried foods, and pizza. The proposed restaurant would have essentially the same menu.

The club served as a social gathering place and occasionally hosted as many as 170 people for events such as weddings and graduations. Bands and disc jockeys were sometimes hired to play music at the club, and this entertainment was advertised

in the newspapers. Clearly, public restaurants and bars serve, likewise, as social gathering places.

Some of the patrons of the club lived within walking distance of the facility, but most relied upon automobiles for access. The same would be true of a restaurant and bar, even if, as has been suggested, the restaurant and bar would draw a greater portion of its patronage from outside of the neighborhood.

Residents of the neighborhood have speculated that, if the facility were converted to public use, a great number of "strangers" might enter the area. Further, because parking problems arose on occasions when the club held events that attracted large numbers of people, residents fear that parking problems will also arise from using the property as a restaurant and bar.

The doctrine of natural expansion would, however, support increased intensity in the property's utilization. Transforming the private club into a public facility would serve primarily to expand its patron base. Further, given that the nonconforming use is the sale of food and beverages, such use would remain the same regardless of whether patrons and their guests are neighborhood residents or outsiders.

Clearly, the nature of a nonconforming use must be determined from the actual use to which the property is being put rather than from the identity of the users. Labeling the users as members and guests of a private club or as members of the general public is not determinative of the actual use of the premises.

■ In short, although the proposed public use of the property may not be identical in every respect to its use as a private club, the public use is at least a very, similar one. Given this similarity and the property owner's right to expand the intensity of the existing use, it was error to revoke the occupancy permit for the proposed restaurant and bar.[2] The

2. In view of this holding, we need not address appellant's alternative argument that the occupancy permit issued by the building inspector became a vested interest.

order of the Commonwealth Court affirming the revocation of the permit must, therefore, be reversed.

Order reversed.

LARSEN, J., did not participate in the consideration or decision of this case.

PAPADAKOS, J., did not participate in the consideration or decision of this case.