# Salisbury House of Northeast PA Inc. v. City of Allentown Zoning Hearing Board

C.P. of Lehigh County, no. 1998-C-2890.

*Daniel G. Dougherty,* for appellant.
*Erich J. Schock,* for appellee.

REIBMAN, *J.,* October 25, 1999—Before the court is the Salisbury House of Northeast Pennsylvania Inc., appellant's, appeal from the City of Allentown Zoning Hearing Board's November 11, 1998 decision wherein the board denied appellant's request to operate a "personal care boarding home."

The within appeal concerns a three-story structure located at 513-519 Lehigh Street Allentown, Lehigh County. The property is commonly referred to as the Acorn Hotel, which has been used as a rooming house and hotel since the 1800s. At some point following its inception, the property was zoned I-3 or general industrial pursuant to section 1337 of the codified ordinances of the City of Allentown. The operation of a hotel, restaurant, bar or boarding house is not a permitted use in a general industrial zone. See ordinance at section 1337. However, because the Acorn Hotel was in operation prior to the adoption of the zoning code, the Acorn Hotel was permitted to operate as a nonconforming use.[1]

The first floor of the Acorn Hotel contains a bar area, dining room and kitchen area; the second and third floors contain 22 rooming units. Appellant purchased the property in June 1998, with the intent to convert it into what

---

1. "All uses and all structures not conforming to the regulations of the zone in which they are located, prior to April 24, 1948, shall be known and regarded as nonconforming. . . ." See ordinance at section 1359.02 "Applicability."

appellant classifies as a "personal care boarding home." In an effort to modify the Acorn Hotel into a personal care boarding home, appellant proposed to convert the existing 22 rooming units into 12 rooming units and to add two handicap accessible bedrooms on the first floor. In addition, appellant proposed to enclose the existing second floor open porch and to subdivide the lot into two parcels.

Appellant's proposals were verbally denied by the City of Allentown Planning Department and Zoning Office. Thereafter, appellant filed an appeal before the board. A public hearing was held on October 5, 1998. At its meeting on October 19, 1998, the board denied appellant's request to convert the property into a personal care boarding home and granted appellant's subdivision request. The board issued a written decision on November 11, 1998. From that decision, appellant filed the within appeal.

Where, as here, no additional evidence was presented subsequent to the board's decision, the court is limited to determining whether the board committed a manifest abuse of discretion or an error of law. *East Torresdale Civic Association v. Zoning Board of Adjustment,* 536 Pa. 322, 325, 639 A.2d 446, 448 (1994). An abuse of discretion can be found only if the board's findings are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 640 (1983). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bailey v. Upper Southhampton Township,* 690 A.2d 1324, 1325 n.1 (Pa. Commw. 1997). An error of law is committed if the

board erroneously interpreted or misapplied the law to the facts of the case. *Highland Park Community Club of Pittsburgh v. Zoning Board of Adjustment*, 82 Pa. Commw. 380, 475 A.2d 925 (1984), *aff'd,* 509 Pa. 605, 506 A.2d 887 (1986).

It is undisputed that appellant's proposed use is not a permitted use in a general industrial area. Consequently, to prevail, appellant must establish that (1) the prior owners of the property never abandoned the prior nonconforming use of the property as a restaurant/hotel/boarding house; and (2) the proposed use must be a continuation of the prior nonconforming use. See *Latrobe Speedway Inc. v. Zoning Hearing Board of Unity Township,* 553 Pa. 583, 720 A.2d 127 (1998); *Limley v. Zoning Hearing Board of Port Vue Borough,* 533 Pa. 340, 625 A.2d 54 (1993). In the case at bar, the board found the prior nonconforming use had been abandoned and the proposed use was not a continuation of the prior nonconforming use.

Turning first to the issue of whether the prior nonconforming use was abandoned, the Pennsylvania Supreme Court in *Latrobe, supra,* set forth the following test for determining whether a prior nonconforming use has been abandoned and who has the burden of proof: "[f]ailure to use the property for a designated time provided under a discontinuance provision is evidence of the intention to abandon. The burden of persuasion then rests with the party challenging the claim of abandonment. If evidence of a contrary intent is introduced, the presumption is rebutted and the burden of persuasion shifts back to the party claiming abandonment." *Latrobe,* 553 Pa. at 592, 720 A.2d at 132.

Here, the ordinance contains a discontinuance provision which specifically provides that failure to use the property for a continuous 24-month period equates to a discontinuance of the nonconforming use and the property shall not be occupied except by a use which conforms to the applicable zoning regulations. See ordinance at section 1359.03(5). Upon review of the record, however, there is no evidence to indicate the prior owners of the property failed to use the property as either a restaurant or boarding house for a "continuous" 24-month period as is required under the ordinance. The record indicates only that there was a lapse in the use of the property for up to six months due to problems with cleaning damage from vandalism and removing various underground tanks. N.T., October 5, 1998 at pp. 33-38.

Even assuming, arguendo, the board established a 24-month lapse under the ordinance, appellant established a contrary intention and thus rebutted the presumption. During the hearing, George Atiyeh testified he leased the property prior to appellant purchasing the property, and that despite the short time periods where he had to clean the vandalism and remove the various underground tanks, he had no intention of abandoning the use of the property as a restaurant and boarding home. N.T., October 5, 1998 at p. 34.

In response, the board contends Atiyeh's testimony is insufficient to establish a contrary intent because appellant failed to introduce tax returns or receipts of an ongoing enterprise which would support a contrary intention. Appellant does not fail to prove a contrary intention simply because it neglected to produce such returns or receipts. These items are not mandatory and are merely

considerations to support evidence of a contrary intent. *Latrobe,* 553 Pa. at 592, 720 A.2d at 132. Moreover, there is no evidence to imply that Atiyeh was not telling the truth or that he had any pecuniary or other interest in the within appeal. Consequently, under *Latrobe,* the burden then shifted back to the board to establish abandonment. However, the record is devoid of any testimony or evidence introduced by the board to support a finding of abandonment. Accordingly, the board abused its discretion in finding the prior nonconforming use had been abandoned.

Turning to the issue of whether the proposed use is a continuation of the prior nonconforming use of a restaurant/hotel/boarding house, the Pennsylvania Supreme Court in *Limley, supra,* stated "[t]o qualify as a continuation of an existing nonconforming use, a proposed use must be sufficiently similar to the nonconforming use as not to constitute a new or different use." *Limley,* 533 Pa. at 343, 625 A.2d at 55. Appellant contends its proposal to use the property as a personal care home is sufficiently similar because it is "the functional equivalent" of the prior nonconforming use of a boarding house. Section 1301.02(10) of the ordinance defines boarding house as: "a building containing a single-dwelling unit where lodging is provided with or without meals for three or more persons who are not members of the operator's family, and by prearrangement for definite periods of time and for compensation, whether direct or indirect, but not to include rest homes or homes for aged."

In response, the board asserts the use is not the functional equivalent to a boarding house, but rather, is similar to a group home and thus is a different use under the

ordinance. Section 1301.02(43) defines a group home as: "residential clients and attendant (24 hours or less) staff, living together in a dwelling unit as a single housekeeping unit under a common housekeeping management plan based upon an intentionally structured relationship providing organization and stability. A group home may include but is not limited to children, the mentally or physically handicapped and elderly, but does not include drug and alcohol treatment or rehabilitation facilities, or adult pre-release correctional facilities such as work release, halfway houses or similar uses."

The evidence established appellant proposes to run a home where individuals who are unable to care for themselves can live in a supervised environment. These individuals will gain access to the home through referrals from the state hospital or through other community referral programs. There is no age limit for the individuals; however, testimony indicated that the proposed age range was from 30 to 50 years of age. There is no set determined length of stay and, in fact, there was testimony that the individuals may be unable to leave due to their inability to care for themselves. Supervision will be provided 24 hours a day. Assistance with laundry and transportation will be provided. Medical and psychological treatment will not be provided at the home; however, the staff will monitor the self-administration of medication by the residents.

Based on the foregoing, sufficient evidence exists to support the board's determination that appellant's proposed use is not sufficiently similar to a boarding house and thus not a continuation of the prior nonconforming use. The evidence supports the board's finding that the

proposed use was more similar to a group home. Specifically, the evidence established the proposed use went beyond that of a boarding house because it was a structured environment, staffed 24 hours a day, included individuals suffering from chronic mental illness, such as schizophrenia, and the individuals may stay for an indefinite period of time. Moreover, the court must give great weight and deference to the board's interpretation of its own ordinance. See *Johnston v. Upper Macungie Township*, 162 Pa. Commw. 170, 638 A.2d 408 (1994); 1 Pa.C.S. §1921(c)(8); and *Borough of Milton v. Densberger*, 719 A.2d 829, 832 (Pa. Commw. 1998) (the basis for the judicial deference is the knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is charged with administering).

Accordingly, although the board abused its discretion in finding the prior owners abandoned the nonconforming use, appellant still cannot prevail in light of appellant's failure to establish its proposed use is sufficiently similar and thus a continuation of the prior nonconforming use. *Latrobe, supra; Limley, supra.* Consequently, appellant's appeal must be denied.[2]

_____

2. The board also denied appellant's proposal on the basis that appellant failed to establish it was entitled to a variance. However, the record clearly indicates appellant did not appear before the board requesting a variance. Rather, the record indicates appellant sought only to prove there was no abandonment and a continuation of the prior nonconforming use. N.T., October 5, 1998 at pp. 5-8. Therefore, it would be unfair to appellant to examine the record based on a variance standard where it is clear appellant was neither prepared to nor established any hardship which is required to obtain a variance. See *Tirotta v. Zoning Hearing Board of Yeadon*, 110 Pa. Commw. 501, 532 A.2d 937 (1987) (a landowner is entitled to a variance only where he establishes that the zoning regulation uniquely burdens the property so as to create an unnecessary hardship).

## ORDER

And now, October 25, 1999, upon consideration of the Salisbury House of Northeast Pennsylvania Inc.'s appeal from the City of Allentown Zoning Hearing Board's November 11, 1998 decision, opposition thereto, and after oral argument thereon, and for the reasons set forth in the accompanying opinion, it is ordered that said appeal is denied.