**Susan and Terry SHANER, h/w/, and Tijan Leather, Appellants**

v.

**SCHUYLKILL COUNTY ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2004.

Decided Oct. 6, 2004.

---

Stephen T. Carpenito, Ashland, for appellant.

Robert S. Frycklund, Pottsville, for appellee.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION By Judge LEAVITT.

Susan and Terry Shaner (Appellants) appeal from an order of the Schuylkill County Court of Common Pleas (trial court) that affirmed a decision of the Schuylkill County Zoning Hearing Board (Board). At issue is the Board's denial of Appellants' application for a zoning permit to continue a nonconforming use as well as Appellants' alternative request for a use variance.

The property at issue is a three-story brick structure located at 301 Elm Street in the Borough of Auburn (Borough) in Schuylkill County (Property). The Property, which was built prior to the establishment of zoning in 1967, measures 3000 to 3500 square feet and has three loading docks. It has been used over the years primarily for warehousing and as a knitting mill for "the processing, storing and distribution of various garments" for the garment industry. Board Decision at ¶ 4. Pursuant to the County's Zoning Ordinance (Ordinance), adopted in 1995, the Property is located in an R–3 Multi–Family Residential District. The parties do not dispute that neither a knitting mill nor any type of garment warehouse facility would constitute a permitted use in an R–3 district.[1]

---

1. The Principal Permitted Uses in an R–3 district are as follows: "Conversion of non-dwelling structures into permitted residential uses and conversion of single family dwellings to two family dwellings; Multi-family dwellings; Public uses (except sewage treatment plants); Recreation facilities, public; Single family dwellings; Two family dwellings." Schuylkill County, PA, Zoning Ordinance art. III, § 3.710 (2000) (Ordinance), § 3.710. Special Exceptions may be obtained for churches; eating and drinking establishments; fraternal, civic and social organizations; funeral homes; nursing homes; parking garages and lots; professional offices; non-public recreational facilities; retail businesses and personal service establishments (such as food stores, drug stores, barber and beauty shops, apparel stores and hardware stores); schools; semi-public uses and sewage treatment plants. Ordinance, § 3.730.

Appellants purchased the Property on April 3, 2002 from L'Art De La Mode, Inc. when it was still being used as a knitting mill and as a warehouse for storage of the Borough's holiday decorations. Appellants leased a portion of the Property to Tijan Leather, Inc. (Tijan).[2] Tijan began operating "a facility to process animal hides including, but not limited to, the collection, salting, drying and preservation of raw material prior to the material being shipped for final tanning process." Board Decision at ¶ 10. In response to complaints from nearby residents about the odor emanating from the Property, John Hudack, the County's Zoning Officer, sent Appellants an enforcement notice alleging that Tijan was in violation of the Ordinance.

Appellants submitted an application for a zoning permit describing the present use of the Property as "warehousing" and proposing to "continue use of warehousing." County's Brief, Exhibit A. Appellants, along with Tijan, also submitted an application for a hearing before the Board requesting a variance "to use [the] property as warehousing." County's Brief, Exhibit B. In their application, Appellants stated that the Property was always used for commercial purposes and had housed a knitting mill before being used for warehousing.

The Board conducted a hearing on November 6, 2003. Zoning Officer John Hudack testified that the Property was a knitting mill prior to the establishment of zoning in 1967. Although Hudack never entered the building, he observed numerous animal hides through the windows and felt that the operation went beyond mere storage and was not "part of the knitting mill process." Notes of Testimony, Nov. 6, 2003, at 16 (N.T. ——). He saw no evidence of sewing, cutting or manufacturing on the Property. He also did not recall any offensive odor outside of the building.

Appellant Susan Shaner testified that to the best of her knowledge the prior use of the Property was for manufacturing and warehousing of fabrics and materials before shipment, with some alterations and repairs performed on the premises. Shaner was aware that Tijan's employees use salt to cure animal hides in order to maintain them for the tanning process that occurs elsewhere, not on the premises. Shaner remonstrated her tenants for drying hides on the roof on one occasion but, to the best of her knowledge, that was an isolated incident. Shaner described the surrounding neighborhood as including residential homes, a VFW, a church, open space that is used as a brickyard, and a junkyard. Shaner testified that she visits the Property once a week but has never noticed any odor outside the building.

Hayrullah Oztok operates a tannery and purchases skins from Tijan for production of leather garments. Oztok described the Property as a "drying and storing" facility. N.T. 90. He distinguished Tijan's operations from the tanning process, which is more involved and requires the use of chemicals. Oztok testified that wet hides are shipped from the slaughterhouse to Tijan, where salt is applied by hand to preserve the nature of the skin. The hides are then hung to dry for several days. According to Oztok, industry practice requires flesh to be removed at the slaughterhouse; in the event that a hide is received with flesh or excessive grease Tijan's employees apply more salt.

Guy Aungst, a self-employed general contractor, inspected the Property at Appellants' request and prepared several estimates. According to Aungst, demolition

---

**2.** Appellants retained approximately 1000 square feet for their own storage purposes.

and removal of the structure would cost a minimum of $122,236.50. Construction of a two-story, single family dwelling measuring 2,500 square feet would cost an additional $187,500,[3] while construction of a larger two-family dwelling would cost $195,000. Aungst estimated that conversion of the Property into eight apartment units would cost $720,000.

The County offered testimony from several residents who live near the Property. They testified that when the Property was a knitting mill it was used for the knitting of yarn, cutting of cloth and storing and shipping of different types of clothing, which they believed quite different from the present operation. The residents testified in strong terms about the offensive odor caused by the leather drying operation. One resident testified that "the odor is terrible. The stench is wicked." N.T. 117. Three residents compared the odor to a "barnyard smell" or a "manure pit on a farm." N.T. 118, 126, 139. The odor caused these residents to refrain from outdoor activities. Some also claimed to have experienced burning eyes and headaches, although none sought medical treatment. Two residents observed damage to their lawns that they surmised was caused by salt residue that had washed off of the Property. Six additional residents did not testify but identified themselves for the record as "protesting this matter with regard to the smell." N.T. 145.

▪ The Board issued its decision on December 4, 2003, and made the following relevant factual findings:

11. The current use is distinct, separate, and much different from that of a "knitting mill" including those subsidiary uses of a "knitting mill" such as the storing and distribution of garments.

12. The Applicants have not shown that there are unique physical circumstances or conditions peculiar to the property nor that any conditions have caused the Applicants an unnecessary hardship.

13. The Applicants have not shown that the property cannot be developed in strict conformity within the provisions of the Ordinance.

14. Applicants have not shown that a variance is necessary to enable the reasonable use of the property.

15. The current use of processing hides has materially, substantially, and seriously altered the essential character of the neighborhood and district in which the property is located and has interfered with the residents reasonable use and enjoyment of their property.

Board Decision at ¶¶ 11–15. The Board affirmed the enforcement notice and denied Appellants' request for a zoning permit for continuation of use. The Board also denied Appellants' request for a use variance. Appellants appealed to the trial court, which affirmed the Board decision without taking additional evidence. Appellants have now filed this timely appeal.[4]

▪ In their first issue, Appellants argue that the Board erred in denying their request for a zoning permit for continuation of use.[5] To qualify as a continua-

---

3. Aungst included a 20% to 25% profit margin in his estimates for constructing new buildings on the site.

4. Where, as in this case, the trial court has not taken additional evidence, appellate review is limited to a determination of whether the Board committed a manifest abuse of discretion or an error of law. *Limley v. Zoning Hearing Board of Port Vue Borough*, 533 Pa. 340, 343, 625 A.2d 54, 55 (1993).

5. Section 7.100 of the Ordinance (Continuation of Use) provides: "A use, building or structure lawfully in existence prior to the

tion of an existing nonconforming use, a proposed use must be sufficiently similar to the nonconforming use so as not to constitute a new or different use. *Limley v. Zoning Hearing Board of Port Vue Borough*, 533 Pa. 340, 343, 625 A.2d 54, 55 (1993). In determining whether a proposed use bears adequate similarity to an existing nonconforming use, the doctrine of natural expansion must be given effect. *Id.*, 533 Pa. at 344, 625 A.2d at 56. The doctrine of natural expansion "permits a landowner to develop or expand a business as a matter of right notwithstanding its status as a nonconforming use." *Pappas v. Zoning Board of Adjustment of City of Philadelphia*, 527 Pa. 149, 154, 589 A.2d 675, 677 (1991). Our Supreme Court has stated that "once it has been determined that a nonconforming use is in existence, an overly technical assessment of that use cannot be utilized to stunt its natural development and growth." *Township of Chartiers v. William H. Martin, Inc.*, 518 Pa. 181, 188, 542 A.2d 985, 988 (1988).

Appellants argue that Tijan's use of the Property to store and process raw animal hides is a continuation or natural progression of the former use of the Property as a knitting mill. Like the Board, we find Appellants' arguments unconvincing.

Although "knitting mill" is not defined in the Ordinance, the testimony received by the Board, including from Appellant Terry Shaner, established that the prior use of the Property was for storing and prepar-

ing fabrics for garment manufacturing. This involved cutting and sewing the fabrics and, in some instances, alteration and repair of finished garments. Tijan, on the other hand, receives raw, wet animal hides that must be salted and hung to dry before being shipped to a tannery. While both processes may technically be part of the "garment manufacturing industry," the test is similar use, not similar industry. We find that Tijan's use is not sufficiently similar to the preceding, lawful use so as to qualify as a continuation thereof. To the contrary, Tijan's operations constitute a new and different use that involves truly "raw" materials as opposed to textiles. Thus, the Board did not engage in an overly technical assessment of Tijan's use and committed no error in denying Appellants' permit request.

 In their second issue on appeal, Appellants argue that the Board erred in failing to grant their request for a use variance. The law in this area is well settled. The reasons for granting a variance must be substantial, serious and compelling. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983). The party seeking the variance bears the burden of proving that (1) unnecessary hardship will result if the variance is denied and (2) the proposed use will not be contrary to the public interest. *Id.*, 501 Pa. at 555–556, 462 A.2d at 640.[6] The hardship must be

---

adoption of this Ordinance, which does not comply with the applicable use provisions of this Ordinance or any applicable amendment thereto may be continued except as otherwise provided in this Article. Ordinance, § 7.100.

6. Section 8.210 of the Ordinance identifies five factors that the Board must consider when hearing a variance request:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or

shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning

shown to be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district. *Id.* Moreover, mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance. *Id.*

Appellants argue that the Property as zoned has little or no value because removing or renovating what is essentially an industrial structure would be cost-prohibitive. In support, Appellants rely on the testimony of Mr. Aungst and the estimates he prepared. Appellants also challenge the Board's finding that the proposed use would be contrary to the public interest since only nine out of approximately 1,000 residents of the Borough appeared at the hearing to complain about the odor. Appellants point out that none of the complaining witnesses received medical treatment for their alleged physical problems. Appellants also cite the testimony of their witnesses, including zoning officer Hudack and Mr. Aungst, both of whom are impartial, that there was no odor outside the building.

We may quickly reject Appellants' claim that their proposed use is not contrary to the public interest. Four individuals [7] who live near the Property all testified in vivid detail regarding the offensive odor that emanates from the facility. The Board found the testimony of these witnesses to be persuasive and "more credible" than that offered by Appellants' witnesses. Board Decision at 6. As an appellate court we are bound by the Board's credibility determinations and will not revisit that issue. These witnesses also testified that they have been forced to curtail their outdoor activities, and at least two residents have suffered property damage to their lawns from the salt residue. That none of the witnesses sought medical treatment is hardly persuasive, and Appellants cite no authority for their suggestion that an objector to a use variance must offer evidence of a debilitating physical injury. In sum, there is substantial evidence of record to support the Board's determination that Tijan's use of the property would interfere with the right of nearby residents to enjoy their own property. On this basis alone, we would affirm the Board's denial of Appellants' use variance.

■ Appellants' arguments regarding unnecessary hardship are also unavailing.

---

ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.
Ordinance, § 8.210(a). The above factors are virtually identical to the standards for granting a variance set forth in Section 910.2(a) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

7. We disagree with Appellants' assertion that the number of witnesses presented by the County does not adequately represent the public interest. According to an exchange between the Borough's attorney and the Chairman of the Board, it was the Board's usual practice to limit testimony that would end up being repetitive. This is why four witnesses testified, while six additional residents identified themselves for the record and indicated that they joined in their neighbors' protests. We also feel that ten residents of a single neighborhood in a borough of 1,000 people is a representative sample of that portion of the public most directly affected by the proposed use.

It may be true that Appellants would incur great expense in demolishing or renovating the Property for the permitted uses suggested by Mr. Aungst. However, the Ordinance contemplates a number of other possible uses, including a public or nonpublic recreational facility, professional offices, and a variety of retail and personal service establishments. Ordinance, §§ 3.710, 3.730. Appellants simply failed to demonstrate that there are unique physical circumstances or conditions peculiar to the Property that prohibit a permitted use and thereby cause an unnecessary hardship. Moreover, the record reveals that Appellants failed to investigate the zoning classification when they purchased the Property. Ms. Shaner admitted as much when she testified that she thought the Property was zoned commercial based upon the previous owner's representations and an erroneous sales agreement. A quick search of readily available public records would have revealed that the Property was in fact in an R–3 zone. We agree with the County that Appellants' alleged hardship has nothing to do with the uniqueness of the Property and everything to do with a bad business decision.

Based upon the foregoing analysis, we conclude that the Board properly denied Appellants' request for a zoning permit for continuation of use. Appellants' proposed use was not sufficiently similar to the lawful nonconforming use of the Property as a knitting mill or warehouse. The Board did not abuse its discretion or err as a matter of law in denying Appellants' request for a use variance. Appellants failed to prove that their proposed use will not be contrary to the public interest or that unnecessary hardship would result if the variance was denied.

For these reasons, the order of the trial court is affirmed.

**ORDER**

AND NOW, this 6th day of October, 2004, the order of the Court of Common Pleas of Schuylkill dated May 7, 2004 in the above captioned matter is hereby affirmed.