**Earl V. HAGER d/b/a Homestead Family Campground,**
**Appellant,**

v.

**WEST ROCKHILL TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued March 12, 2002.
Decided April 15, 2002.

Douglas C. Maloney, Perkasie, for appellant.

H. Peter Nelson, Perkasie, for appellee.

Before SMITH–RIBNER and FRIEDMAN, JJ., and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Earl V. Hager d/b/a Homestead Family Campground (Hager or the Campground) appeals from the August 29, 2001 order of the Court of Common Pleas of Bucks County (trial court) denying Hager's appeal from portions of the decision of the West Rockhill Township (Township) Zoning Hearing Board (ZHB), which upheld the Township zoning ordinance's imposition of a ninety-day length-of-stay restriction on campers. Hager contends that the Campground was a protected legal, nonconforming use to which the length-of-stay restriction is inapplicable. We affirm.

In December of 1967, Hager purchased property located in the Township at 1150 Allentown Road for the purpose of converting it into the Campground. (ZHB's Findings of Fact, Nos. 1–2; R.R. at 59a–60a.) Following some modifications,[1] the Campground officially commenced operations in the spring of 1969, and it has been operating continuously in one form or another up to the present day. The property is located in the Township's Residential Conservation (RC) zoning district. (ZHB Findings of Fact, Nos. 5–7.)

Effective May 19, 1969, Bucks County adopted a zoning ordinance (BCZO) appli-cable to any municipality that, like the Township at that time, did not have its own zoning ordinance. The BCZO listed "Travel Trailer Camp" as a permitted use in the RC zoning district where the Campground was located, but with the restriction that occupants remain no longer than fifteen days in the same trailer park.[2] (Section 450(14)(c) of the BCZO, R.R. at 197a.) The BCZO also provided that the future enactment of a zoning ordinance by a municipality would act as a repeal *pro tanto* of the BCZO within that municipality. (Section 122 of the BCZO, R.R. at 196a.)

The Township first adopted its own zoning ordinance in December of 1969 (1969 Ordinance). Because the 1969 Ordinance made no specific provision for campgrounds or trailer parks as a permitted use in any zoning district, (*see* R.R. at 202a–03a; R.R. at 34a, 44a), the Campground became a preexisting nonconforming use. From some point in 1969 through the early 1970s, while in nonconforming use status, the Campground began accepting seasonal renters[3] and long-term residents in addition to the daily and weekly short-term renters. In fact, the Campground developed a community-type atmo-

---

1. When purchased, the property included: a principal residential dwelling; a bungalow-style tenant residence; a recreational building with a dance hall, apartment and bar room; a barn; a three-car garage; a tennis court; a swimming pool with locker rooms; and 34½ acres of ground with a spring-fed stream. Immediately after the purchase, Hager installed a sewer system for the houses, constructed roads into the property's interior and installed water and electrical hookups for future campsites. (ZHB's Findings of Fact, Nos. 3–4.)

2. This section of the BCZO provided in pertinent part:
 (14) Travel Trailer Camp
 A lot or part thereof occupied or designed for occupancy by one or more travel trailers or travel units, providing:

 . . .
 (c) Spaces for use of travel trailers shall be rented by the day or week only and occupants of such space shall remain in the same trailer park not more than fifteen (15) days.
 (R.R. at 197a.)

3. The camping season traditionally runs from April to the first of November. For those campers who had been bringing their trailers into the Campground every weekend during the season, Hager offered seasonal campsite rental, where campers could leave their trailer indefinitely, year after year, for a fixed price. Hager testified that some campers have been doing this since 1969. (R.R. at 63a–64a.)

sphere, with communal religious services, as well as social events and activities planned by the Campground's long-term campers. (*See* R.R. at 74a–77a.) Hager never sought municipal approval for this evolving use of the Campground.

In June of 1977, the Township adopted a new zoning ordinance (1977 Ordinance). Unlike the 1969 Ordinance, the 1977 Ordinance permitted campground use in the Township. However, because the use was not permitted in the RC zoning district, (*see* section 404 of the 1977 Ordinance, R.R. at 214a; R.R. at 35a–36a), the Campground remained a nonconforming use. In districts where campgrounds were permitted, the 1977 Ordinance imposed the identical fifteen-day length-of-stay restriction that originally was set forth in the BCZO for such use.[4] (Section 404(C14) of the 1977 Ordinance, R.R. at 215a.)

In 1990, the Township adopted its current zoning ordinance (1990 Ordinance), which is the subject of this appeal. The 1990 Ordinance permits "Recreational Campsite" use but only in an RS district, (*see* section 405(E–15) of the 1990 Ordinance, R.R. at 231a, 233a); thus, the Campground remains a nonconforming use in the RC district. As to such campsites, the 1990 Ordinance now imposes a ninety-day, rather than a fifteen-day, length-of-stay restriction.[5] (Section 405(E–15(5)) of the 1990 Ordinance, R.R. at 232a.)

The Campground's present problems began in the summer of 2000, when the Township Zoning Officer, investigating a complaint, visited the Campground and found a recently completed cabin, a second started but incomplete cabin and wood to construct a third cabin. Hager had failed to obtain any permits for these buildings. (ZHB's Findings of Fact, Nos. 12–13.) On June 21, 2000, the Township Zoning Officer issued a Notice of Violation to Hager, and, on June 29, 2000, he issued a Cease and Desist Order, alleging that Hager violated sections 902 and 903 of the 1990 Ordinance (relating to the need for permits in connection to building construction) and section 405(E–15(5)) of the 1990 Ordinance (relating to the ninety-day length-of-stay restrictions). (ZHB Findings of Fact, No. 14.)

Hager appealed the Cease and Desist Order to the ZHB. In addition, he requested a special exception to permit an expansion of the nonconforming campground use to include the three cabins, and he sought a variance from the ninety-day length-of-stay limitation imposed by the

---

4. The 1977 Ordinance provided in relevant part:

(C14) *Campground*

A lot or part thereof occupied or designed for occupancy by one or more travel trailers or travel units, or campsites, or recreational vehicles, subject to the following additional provisions:

. . .

(d) Spaces for use of travel trailers shall be rented by the day or week only, and occupants of such spaces shall remain in the same trailer park not more than fifteen (15) days.

(R.R. at 215a.)

5. The 1990 Ordinance provides in relevant part:

*E–15 RECREATIONAL CAMPSITES*

A lot on which two or more campsites are located, established or maintained for occupancy as temporary living quarters for recreation or vacation purposes. A campsite shall be a plot of ground intended for the accommodation of either a recreational vehicle, tent or other individual camping unit on a temporary basis. Such campsites shall be rented for the day, week or month only and occupants of such site shall not use the campsite as a permanent residence.

. . .

5. Spaces for use of travel trailers shall be rented by the day or week only and occupants of such spaces shall remain in the same trailer park not more than 90 days in any one calendar year.

(R.R. at 231a–32a.)

1990 Ordinance. Finally, Hager challenged the validity of the 1990 Ordinance. The ZHB held hearings on the matter on November 1, 2000 and December 6, 2000. On January 3, 2001, the ZHB issued an order (1) denying Hager's appeal from the Cease and Desist Order, (2) conditionally granting Hager's request for a special exception, (3) denying Hager's request for a variance to permit campers to remain longer than ninety days a year at the Campground, and (4) denying Hager's challenge to the validity of the 1990 Ordinance. (ZHB decision at 8–9, R.R. at 240a–41a.)

With regard to the length-of-stay issue, the ZHB acknowledged "that a campground was clearly established on this property (although the extent and size of the same cannot be determined) prior to the exercise of police power by the adoption of zoning ordinances and this campground use has attained a constitutionally protected nonconformity." (ZHB decision at 6, R.R. at 238a.) However, the ZHB disagreed with Hager's claim that this nonconformity included the concept that there could be no length-of-stay restriction imposed on the Campground. Because neither party specifically defined the initial extent of the Campground use, the ZHB concluded that Hager failed to demonstrate that he gained nonconforming status

as to the time limitations in the BCZO, now expanded by the 1990 Ordinance. (See ZHB decision at 5, 7, R.R. at 237a, 239a.) The ZHB then went on to conclude that the Campground did not meet the standards that would permit the granting of a variance from these restrictions. (See ZHB decision at 7–8, R.R. at 239a–40a.)

■ Hager appealed to the trial court, challenging the ZHB's decision insofar as it (1) denied the Campground's appeal from the Cease and Desist Order based on the Campground's violation of section 405(E–15(5)) of the 1990 Ordinance, and (2) denied the Campground's request for a variance from the ninety-day length-of-stay restriction in that section of the 1990 Ordinance.[6] (R.R. at 160a–63a.) The trial court affirmed the ZHB, holding that the ZHB did not err or abuse its discretion when it concluded that the trailers and the newly constructed cabins were subject to the ninety-day limitation set forth in the 1990 Ordinance. Hager now appeals to this court,[7] limiting his challenge to the Township's imposition of the 1990 Ordinance's length-of-stay restriction on the Campground's nonconforming use.[8] Hager advances three different theories to support his contention that the Campground enjoys protected legal nonconforming use status without any length-of-stay

6. Hager previously had abandoned his constitutional challenge to the 1990 Ordinance. (Trial court op. at 4, n. 4, R.R. at 247a.) For its part, the Township failed to cross-appeal from the ZHB's decision to grant Hager's request for a special exception with regard to the construction of the cabins. (Trial court op. at 7, n. 6, R.R. at 250a.)

7. Our scope of review in zoning cases, where the trial court does not take additional evidence, is limited to determining whether the ZHB committed an error of law or abused its discretion. *Ficco v. Board of Supervisors of Hempfield Township*, 677 A.2d 897 (Pa. Cmwlth.1996). The ZHB abuses its discre-

tion only if its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

8. On appeal to this court, Hager fails to raise his previous argument that the ZHB erred in denying the Campground a variance from the 1990 Ordinance's ninety-day length-of-stay restriction. (See Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), R.R. at 255a; Hager's brief, Statement of the Questions Involved at 3.) Thus, the sole issue before us is whether the length-of-stay restriction in the 1990 Ordinance applies to the Campground.

restrictions, and he asserts that he would prevail under any one of these theories.

## I.

 Hager first argues that the ZHB erred in failing to recognize that the Campground's protected nonconforming use rights include serving unlimited length-of-stay campers. According to Hager, the record contains uncontroverted evidence that the Campground use was established without length-of-stay restrictions prior to the 1969 adoption of the BCZO, the first zoning ordinance regulating land use in the Township. Therefore, Hager maintains that the Township cannot abrogate the Campground's right to operate free of this limitation. We disagree.

 A pre-existing nonconforming use arises when a lawful existing use is subsequently barred by a change in the zoning ordinance. *Scalise v. Zoning Hearing Board of Borough of West Mifflin*, 756 A.2d 163 (Pa.Cmwlth.2000). The right to maintain a pre-existing nonconformity is available only for uses that were lawful when they came into existence and which existed when the ordinance took effect. Pre-existing illegal uses cannot become nonconforming uses with a protected right to exist upon enactment of a new ordinance prohibiting them. *Id.* It is the burden of the party proposing the existence of such nonconforming use to establish both its existence and legality before the enactment of the ordinance at issue. *Lantos v. Zoning Hearing Board of Haverford Township*, 153 Pa.Cmwlth. 591, 621 A.2d 1208 (1993).

After careful consideration of the record, we are satisfied that the ZHB did not err or abuse its discretion in determining the extent of the Campground's constitutionally protected nonconformity. Although Hager successfully proved that the Campground was operating prior to the adoption of the BCZO, Hager did not present evidence sufficient to prove that the Campground included seasonal or permanent renters in advance of the BCZO's adoption. In fact, the record seems to imply otherwise.[9] (*See* R.R. at 62a–63a.) Therefore, with regard to the Campground's operation, the ZHB justifiably determined that long-term campsite rental was lawful but nonexistent prior to the adoption of the BCZO, whereas long-term campsite rental existed but was unlawful after adoption of the BCZO. Accordingly, the ZHB properly held that Hager failed to meet his burden of proving legal nonconforming

---

9. As stated, the Campground formally opened in the spring of 1969. Thus, the Campground existed for an extremely brief period prior to the adoption of the BCZO, with its limitations on campground use, in May of that same year. As to the type of campers utilizing the Campground during this period, Hager provided the following testimony:

> Q When did you open the business for campers?
> A I guess '69 I think. I was there in '68 ready for business, but I didn't have any.
> Q You were still working on the site in '68?
> A Yes.
> Q And in '69 you began to receive campers?... Alright, and at that time, what type of campers—let's go with the first season of rental. In 1969 what kind of campers were

you getting; were they overnight, weekend, were they seasonal?
> A Well, *they started as overnighters* and then when they came in and liked it they stayed longer and longer.....
> Q Did the nature of your business change from say 1969 through the early seventies?
> A The trailers got bigger and had more utilities and fixtures in them and they stayed longer.

(R.R. at 62a–63a.) (Emphasis added.) In view of Hager's admission that the initial campers were overnighters and that the mix of campers evolved over the course of time to include long-term renters, we cannot say that Hager definitively established that the Campground exceeded the length-of-stay restrictions before the adoption of the BCZO only weeks after the Campground opened.

status with regard to the time restrictions of the BCZO.

■ Moreover, the fact that the BCZO was repealed *pro tanto* when the 1969 Ordinance was adopted does not change the extent of the acquired nonconformity. Only those uses that were *lawful* at the time of the adoption of the 1969 Ordinance acquired protected nonconforming use status. *See Scalise*. Because the BCZO only permitted travel trailer [10] camps that rented trailer space for no more than fifteen days, this same length-of-stay limitation attached to the Campground's protected nonconformity after enactment of the 1969 Ordinance. As the trial court stated, "even if [Hager] presented evidence that seasonal camping took place at the [C]ampground in the early 1970s, he failed to prove that the seasonal camping was a *lawful*, pre-existing nonconforming use since the 1969[O]rdinance banned such activity and the [BCZO] limited camping to 15–days [sic] periods." (Trial court op. at 6, R.R. at 249a.) Because an *unlawful*

nonconforming use enjoys no constitutional protection, Hager does not prevail under his first theory.

## II.

Hager claims, however, that he does not have to show that long-term camping existed prior to the enactment of the BCZO in order to succeed, and, under his second theory, Hager acknowledges, for the sake of argument, that when the 1969 Ordinance took effect, the Campground's nonconforming use was subject to the fifteen-day limit set forth in the BCZO. Starting with this premise, Hager argues that the evolution of the Campground to accommodate seasonal and long-term campers was a natural expansion of the original nonconforming campground use allowed as of right under the 1969 Ordinance.[11] According to Hager, this natural expansion eliminated the length-of-stay restrictions that previously governed the Campground, and because the expansion was complete before the Township adopted the 1977 Ordi-

---

**10.** Section 226 of the BCZO defines "Travel Trailer" as "a vehicular portable structure built on a chassis designed as a temporary dwelling for travel, recreation, vacation, and other short-term uses, having a body width not exceeding eight (8) feet and a body length not exceeding thirty-two (32) feet." (Township's brief, Appendix A at 12.)

**11.** Hager contends that the 1969 Ordinance allowed such expansion without municipal approval. In this regard, Hager notes that the 1969 Ordinance provides only three restrictions with regard to the expansion of uses, and he asserts that none of the three restrictions applies to the expansion here. Section 910 of the 1969 Ordinance provides that "The lawful use of … any land as existing and lawful at the time of the enactment of this Ordinance, … may except as hereinafter provided, be continued although such use does not conform with the provisions of this Ordinance or subsequent amendments." (R.R. at 209a.) Section 920(b) of the 1969 Ordinance provides in pertinent part that nonconforming uses shall not be altered, re-

constructed, extended or enlarged, except in accordance with the following provisions:

(1) The proposed extension shall take place only when the lot or contiguous lots [were] held in the same ownership at the time the use became nonconforming.

(2) The proposed extension shall conform with the area, building height, parking, sign and other requirements of the district in which said extension is located.

(3) Any increase in volume or area of the nonconforming use shall not exceed an aggregate of more than one hundred (100) of such volume or area during the life of the nonconformity.....

For non-conforming uses whose normal operations involve natural expansion (quarries, landfills, cemeteries, lumbering, etc.), expansion shall be permitted by right up to one hundred (100) percent of the volume or area of the nonconformity as above.... Additionally, all performance standards required by this [1969] Ordinance and any applicable provision of the [BCZO] effected May 19, 1969 shall be met.

(R.R. at 210a.)

nance, the Township cannot now restrict the Campground use by applying the length-of-stay provision found in the 1990 Ordinance.

■ The Township asserts that Hager waived this issue by failing to raise it either in his appeal to the trial court or in his Statement of Matters Complained of on Appeal Pursuant to Pa. R.A.P.1925(b) (Statement). Alternatively, the Township contends that Hager cannot prevail under this second theory because the rental of campsites to persons on a seasonal or permanent basis is not a natural expansion of Hager's protected nonconforming use but, rather, constitutes a new or different use.

■ With regard to waiver, Hager argues that this issue, i.e., the Campground's natural expansion of nonconforming use rights between 1969 and 1977, clearly was preserved on appeal to both the trial court and this court. Specifically, Hager refers to paragraph nine of his appeal to the trial court and paragraph two of his Statement.[12] Although we agree that Hager's appeal presents the issue of the establishment of nonconforming use rights under the 1969 Ordinance, we note that he does not do so within the context of the doctrine of natural expansion.[13] Thus, Hager has waived the right to raise the issue at this time.[14] *See Mulberry Market,*

---

**12.** In paragraph nine of his appeal to the trial court, Hager states:

> The [ZHB] erred in failing to recognize [Hager's] establishment of non-conforming use rights during the period from December, 1969 to June, 1977 when [the Township's 1969 Ordinance] made no provision for the campground use and during which period [Hager] established non-conforming use rights with respect to all aspects of his [C]ampground operation.

(R.R. at 162a.)

In paragraph two of the Statement, Hager states:

> The [t]rial [c]ourt and [the ZHB] erred in failing to find that [Hager's C]ampground had established non-conforming use rights to operate the [C]ampground without length-of-stay restrictions during the period of time from December 1969 to June 1977 when the then applicable [1969 Ordinance] was illegal and invalid as to campgrounds by establishing a de jure prohibition upon campground use, during which period the [C]ampground operated without length-of-stay restrictions.

(R.R. at 255a–56a.)

**13.** Indeed, the paragraphs to which Hager refers argue the establishment of nonconforming use rights based solely on the invalidity of the 1969 Ordinance.

**14.** We feel it only fair to acknowledge the truth of Hager's assertion that this issue, now waived, was argued and briefed by both parties at the trial court level. However, even if

we were to consider its merits, we would have to conclude that Hager could not prevail with his argument.

The doctrine of natural expansion permits a landowner to develop or expand a business as a matter of right notwithstanding its status as a nonconforming use. Once it has been determined that a nonconforming use exists, an overly technical assessment of that use cannot be utilized to stunt its natural development and growth. *Limley v. Zoning Hearing Board of Port Vue Borough,* 533 Pa. 340, 625 A.2d 54 (1993), (quoting *Pappas v. Zoning Board of Adjustment of the City of Philadelphia,* 527 Pa. 149, 589 A.2d 675 (1991)). Indeed, a nonconforming use cannot be limited to the precise magnitude thereof which existed on the date when the zoning ordinance was adopted. *Limley.* However, there is no constitutionally protected right to change a nonconforming use to another use not allowed by the zoning ordinance, nor may an additional nonconforming use be appended to an existing nonconformity. *Daley v. Zoning Hearing Board of Haverford Township,* 75 Pa.Cmwlth. 101, 461 A.2d 347 (1983). Therefore, to qualify as a continuation of an existing nonconforming use, a proposed use need not be identical to the existing use, but it must be sufficiently similar to the nonconforming use so as not to constitute creation of a new or different use. *Limley.* Moreover, we have held that expansion can only be that which is absolutely necessary and cannot be inconsistent with the public interest. *Abbot v. Commonwealth,* 56 Pa.Cmwlth. 482, 425 A.2d 856 (1981). Thus,

*Inc. v. City of Philadelphia, Board of License & Inspection Review,* 735 A.2d 761 (Pa.Cmwlth.1999); *Gall v. Zoning Hearing Board of Upper Milford Township,* 723 A.2d 758 (Pa.Cmwlth.), *appeal denied,* 559 Pa. 682, 739 A.2d 545 (1999).

### III.

■ Under his third theory, Hager argues that, even if it did not previously acquire nonconforming use rights without length-of-stay restrictions, the Campground acquired them by virtue of the Township's 1969 Ordinance, in effect until 1977. Hager asserts that the 1969 Ordi-

any expansion must be reasonable, it must not lead to the creation of a new nonconforming use, it must only be that which is absolutely necessary and it must not be inconsistent with the public interest. *Id.* We agree with the Township that renting campsites for use as long-term or permanent residences is a new use, distinct from the rental of campsites for recreational purposes; thus, the expansion here does not qualify under this standard.

In support of his position that this expansion did not create a new use, Hager contends that the property was always a campground use, and it remains so even where permanent renters are present. He explains that the identical facilities are used in either case and that only the method of payment has altered. He also asserts that the situation here is akin to other cases allowing expansion of nonconforming uses as a natural development of the use. However, we remain unpersuaded that the elimination of length-of-stay restrictions merely expands, rather than alters, the Campground's nonconforming use.

Hager maintains that the Township confuses "recreational camping" and "camping," the nature of which embraces long-term, non-recreational campers, and he asserts that it is the latter that is the protected nonconforming use here. We disagree. Contrary to Hager's assertion, the existing nonconforming use in this case is that of a *recreational* campground. Indeed, we note that Hager premised his second theory on the fact that the Campground's protected nonconformity was that identified in the BCZO as a *"Travel* Trailer Camp" and limited accordingly. Moreover, the term

nance was invalid in that it made no provision for campground use in any zoning district and, thus, accomplished an illegal *de jure* exclusion of the legitimate campground use from the Township. Accordingly, Hager contends that unfettered development of the Campground during the period of this invalid 1969 Ordinance was legal, notwithstanding the status of the nonconformity prior to the enactment of the 1969 Ordinance. *See H.R. Miller Company, Inc. v. Board of Supervisors of Lancaster Township,* 529 Pa. 478, 605 A.2d 321 (1992) (stating that a successful challenge to an ordinance as exclusionary in-

campground, by definition, denotes temporary, recreational lodging and is recognized as such in all the ordinances before us.

This recreational campground use clearly is different from the quasi-residential use of Hager's proposed expansion, and Hager himself acknowledges as much. Specifically, Hager testified that many of his long-term "campers" are at the Campground due to work assignments or financial difficulties, and he differentiates this type of use from recreational camping. *(See* R.R. at 91a–95a.) Hager also testified that the Campground enjoys a community atmosphere and has its own elected mayor to run meetings at which long-range plans are made for the Campground. *(See* R.R. at 76a.) In addition, Hager admits to a clear distinction between a campground and a mobile home lot, which his proposed use resembles, and he agrees that each use has different requirements under the 1990 Ordinance. *(See* R.R. at 87a–88a.) Because renting campsites to long-term residents is a new and different activity from recreational campsite use, Hager cannot rely on the doctrine of natural expansion to exclude length-of-stay restrictions from the Campground's protected nonconformity. Here, the 1990 Ordinance permits campgrounds in other districts subject to a ninety-day length-of-stay restriction. A nonconforming use is not entitled to greater rights than those afforded to conforming uses. *Pennridge Development Enterprises v. Volovnik,* 154 Pa.Cmwlth. 609, 624 A.2d 674 (1993). Thus, the Township merely is enforcing on Hager's nonconforming Campground the same regulations that conforming campgrounds must follow.

validates the entire ordinance and, absent a valid ordinance, an owner can use the property as he wishes). Hager also contends that, by the time the Township cured the invalidity in 1977, the Campground had long permitted seasonal campers and so was not subject to the fifteen-day limit imposed by the 1977 Ordinance.

■■■■■ However, Hager provides no support for his contention that, by merely challenging an ordinance no longer in effect as invalid, one can transform a nonconforming use into a conforming use or allow unfettered expansion of a nonconforming use. Indeed, there is no authority for such a position. A municipality's zoning ordinance is presumed valid and constitutional unless proven otherwise. *Ficco v. Board of Supervisors of Hempfield Township*, 677 A.2d 897 (Pa.Cmwlth.1996). Yet, in making his argument, Hager presumes the 1969 Ordinance is invalid, without following the procedures required to challenge its validity and without meeting the heavy burden to prove its invalidity. In addition, we note that when a party submits to a zoning hearing board a substantive challenge to the validity of an ordinance, the date on which the challenge was submitted is the controlling date. Section 916.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *added by* section 99 of the Act of December 21, 1988, P.L. 1329, *as*

*amended,* 53 P.S. § 10916.1; *see Hammermill Paper Company v. Greene Township,* 39 Pa.Cmwlth. 212, 395 A.2d 618 (1978). In other words, it is the ordinance in effect as of the date of the filing of the challenge that will be considered as the subject of the challenge. 53 P.S. § 10916.1; *see Hammermill Paper.* Therefore, any challenge to the 1969 Ordinance should have been made while that ordinance was in effect, and the 1990 Ordinance, which Hager does not contend is *de jure* exclusionary, would control any current challenge to the Township's zoning ordinance. *See Hammermill Paper.* In short, Hager cannot challenge the validity of the 1969 Ordinance at this time or in this manner, and he certainly cannot claim rights based on the success of this challenge. Thus, the third of Hager's theories must fail.

Because Hager failed to show that the ZHB erred or abused its discretion in making its January 3, 2001 ruling, we affirm.

### ORDER

AND NOW, this 15th day of April, 2002, the order of the Court of Common Pleas of Bucks County, dated August 29, 2001, is hereby affirmed.