IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlestown Township, Pennsylvania, : 
                   Appellant : 
                         : 
             v. : 
                         : 
CMI Hartman, LLC, Sharyn L. : 
Gallagher, Monica Bell, Elizabeth Doan, : 
Jeremy H. Gonzalez Ibrahim, Jr., and :    No. 678 C.D. 2021
Elaine Gonzalez Ibrahim :    Argued: March 7, 2022

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: April 1, 2022

       Charlestown Township (Township) appeals from the May 17, 2021 order of the Court of Common Pleas of Chester County (trial court) granting the motions for summary judgment filed by CMI Hartman, LLC (CMI), Jeremy H. Gonzalez Ibrahim, Jr., and Elaine Gonzalez Ibrahim (the Gonzalez Ibrahims), Sharyn L. Gallagher (Gallagher), Monica Bell (Bell), and Elizabeth Doan (Doan) (collectively, Appellees) and denying Township's motion for summary judgment. Upon review, we affirm.

       This matter involves a 2.55-acre property located in Township and known as Hartman Run (Property). *See* Trial Court Memorandum Opinion and

Order dated May 17, 2021 (Trial Court Opinion)[1] at 1.  Sometime prior to 1950,[2] four structures were constructed on the Property and thereafter used as residential rental units, although they remained on a single lot, under single ownership.  *See id.*  In 2009, then-owner Hartman Run, LLC, submitted to Township a plan to convert the Property to condominium ownership, which plan was not well received by Township's Planning Commission.  *See id.* at 1-2.

CMI acquired the Property in November 2011.  *See* Trial Court Opinion at 2.  Thereafter, in February of 2012, CMI informally proposed to Township's Board of Supervisors the conversion of the Property's ownership to condominiums.  *See id.*  As with the previous owners, CMI's proposal to convert the Property to condominium ownership was not received favorably by Township.  *See id.*

On December 15, 2016, CMI filed with the Chester County Recorder of Deeds a Declaration of Condominium (Declaration) converting the existing single-family rental residences on the Property to condominium units.[3]  *See* Trial Court Opinion at 2.  The Declaration created four condominium units, each with a separate tax parcel number, which CMI then sold in fee simple to Doan, Gallagher, Bell, and the Gonzalez Ibrahims.[4]  *See id.*

---

[1] The trial court adopted the Trial Court Opinion as its Pa. R.A.P. 1925(a) opinion.  *See* "Opinion Pursuant to Pa. R.A.P. 1925" filed July 16, 2021.

[2] Township first enacted its Zoning Ordinance in 1950 and Subdivision and Land Development Ordinance (SALDO) in 1970.  *See* Trial Court Opinion at 5 n.7.

[3] CMI recorded an Amended and Restated Declaration changing CMI's name from Hartman Run, LLC, to CMI Hartman, LLC, in February 2017.  *See* Trial Court Opinion at 2 n.2.

[4] Specifically, CMI sold the Property's units as follows:  Unit 1 (Tax Parcel No. 35-2-95.1) to Gallagher by deed recorded on August 15, 2018; Unit 2 (Tax Parcel No. 35-2-95.2) to Bell by deed recorded on February 13, 2019; Unit 3 (Tax Parcel No. 35-2-95.3) to Doan by deed recorded December 5, 2017; and Unit 4 (Tax Parcel No. 35-2-95.4) to the Gonzalez Ibrahims on January

2

On October 26, 2018, Township sent a letter (First Violation Letter) to Property unit owners Doan, Gallagher, and the Gonzalez Ibrahims (collectively, Unit Owners)[5] announcing that, because no subdivision and land development plan had been approved, the Property was in violation of the Pennsylvania Municipalities Planning Code[6] (MPC), Section 202 of Township's Subdivision and Land Development Ordinance (SALDO),[7] and the Uniform Condominium Act (UCA).[8] *See* Trial Court Opinion at 2; *see also* First Violation Letter, Reproduced Record (R.R.) at 153a-55a. The First Violation Letters provided a 30-day window during

---

16, 2018. *See* Trial Court Opinion at 2. The original Tax Parcel No. 35-2-95 was transferred to the unit owners in proportions specified by the Declaration as common elements of the condominium. *See* Reproduced Record (R.R.) at 201a.

[5] Bell is included within this collective Unit Owners identifier in this opinion despite the fact that Township did not send her the First Violation Letter, as she had yet to purchase Property Unit 2. *See* Trial Court Opinion at 2; *see also supra* note 3.

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[7] Section 202 of the SALDO provides:

> Sale of Lots; Erection of Buildings. No lot in a subdivision may be sold, no permits to erect, alter or repair any building upon land in a subdivision or land development may be issued; and no building may be erected in a subdivision or land development unless and until a subdivision or land development plan, submitted in accordance with this Ordinance, has been approved, and where required, recorded, and unless and until the required improvements in connection therewith, along, upon or through the lot or lots to be sold or built upon and to an existing improved street, have been constructed and approved, or in lieu thereof, the Township has been assured of the completion of such construction by means of a completion guarantee in the form of a bond or other security in accordance with the provisions of Article III of this Ordinance.

SALDO at 4, Section 202; R.R. at 390a.

[8] 68 Pa.C.S. §§ 3101-3414.

which the Unit Owners could remedy the purported violations by filing appropriate applications with Township. *See* Trial Court Opinion at 2-3. None of the Unit Owners submitted any applications as advised in the First Violation Letter and on March 21, 2019, Township forwarded a second letter (Second Violation Letter) informing the Unit Owners[9] that Township would seek to enforce its Zoning Ordinance and SALDO. *See id.* at 3.

Township filed a complaint against CMI and the Unit Owners (Complaint) on July 17, 2019, alleging that the Property had been illegally converted to condominium ownership without the approval of Township. *See* Trial Court Opinion at 3. The Complaint sought an order nullifying the deeds relating to the Unit Owners' various units and directing the Chester County Recorder of Deeds to strike the Declaration and the unit deeds from Chester County's property records. *See id.* at 3-4. Appellees[10] and Township filed motions for summary judgment in mid-January 2021. On May 17, 2021, the trial court entered its order granting Appellees' motions for summary judgment and denying Township's motion for summary judgment. *See* Trial Court Opinion. The trial court determined that the Property was a lawful, nonconforming use and that the conversion of the Property to condominium ownership without a redivision of boundary lines or changes to any existing structures did not constitute a subdivision subject to the requirements of the MPC or Township's SALDO and was not otherwise affected by the UCA. *See id.* at 7-17. This appeal followed.

---

[9] Having purchased Unit 2 in February of 2019, Bell received the Second Violation Letter from Township along with the other Unit Owners. *See* Trial Court Opinion at 3.

[10] Gallagher and Doan filed a joint motion for summary judgment; the Gonzalez Ibrahims and Bell filed a separate joint motion for summary judgment; CMI filed a third motion for summary judgment on its own behalf. *See* Trial Court Docket No. 2019-06941-MJ, R.R. at 6a.

On appeal,[11] Township claims that the trial court erred by concluding that the conversion of the Property to condominium ownership was not a subdivision of land requiring Township's approval. *See* Township's Br. at 16-32. Township argues that the Property's condominium conversion violated the MPC, Township's SALDO and Zoning Ordinance, and the UCA because the creation of the condominiums constituted a subdivision of the Property. *See id.* We disagree.

This Court has long held that, "if a use is permitted, a municipality may not regulate the manner of ownership of the legal estate." *Ludwig v. Zoning Hearing Bd. of Earl Twp.*, 658 A.2d 836, 838 (Pa. Cmwlth. 1995). This Court has further determined that a condominium, as a method of ownership, is not a property use subject to zoning regulation. *See id.* (citing *Kaufman & Broad, Inc. v. Bd. of Supervisors of W. Whiteland Twp.*, 340 A.2d 909, 911 (Pa. Cmwlth. 1975)).

Additionally, a "lawful nonconforming use establishes in the property owner a vested property right which cannot be abrogated or destroyed, unless it is a nuisance, it is abandoned, or it is extinguished by eminent domain." *Pa. Nw. Distribs., Inc. v. Zoning Hearing Bd. of Twp. of Moon*, 584 A.2d 1372, 1375 (Pa. 1991); *see also Pappas v. Zoning Bd. of Adjustment of Phila.*, 589 A.2d 675, 676 (Pa. 1991) ("the owner of a property to which a lawful nonconforming use has

---

[11] Our standard of review of the grant of summary judgment is *de novo* and our scope of review is plenary. *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011). A motion for summary judgment is properly made if "there is no genuine issue of any material fact as to a necessary element of the cause of action." Pa.R.Civ.P. 1035.2(1). "Summary judgment may be entered only when, after examining the record in the light most favorable to the non-moving party, and resolving of all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law." *Pyeritz*, 32 A.3d at 692. This Court, in the exercise of our appellate review, may reverse a trial court's order only for abuse of discretion or an error of law. *Pentlong Corp. v. GLS Cap., Inc.*, 72 A.3d 818, 823 n.6 (Pa. Cmwlth. 2013).

attached enjoys a vested property right").   The preexisting nonconforming use doctrine is premised on the concern that retroactive enforcement of zoning to extinguish a use that was legal at the time it came into existence may amount to a taking without compensation.  *Baer v. Zoning Hearing Bd. of Quincy Twp.*, 782 A.2d 597, 601 (Pa. Cmwlth. 2001).  A preexisting nonconforming use "arises when a lawful existing use is subsequently barred by a change in the zoning ordinance." *Hager v. W. Rockhill Twp. Zoning Hearing Bd.*, 795 A.2d 1104, 1110 (Pa. Cmwlth. 2002).  The right to maintain a preexisting nonconforming use is available "for uses that were lawful when they came into existence" prior to when the prohibitory ordinance took effect.  *Id.*  Further, "the right to continue a legal nonconforming use is entitled to the constitutional protection of due process."  *Hunterstown Ruritan Club v. Straban Twp. Zoning Hearing Bd.*, 143 A.3d 538, 545 (Pa. Cmwlth. 2016).

The existence of the four residential units on the Property predated the enactment of the Zoning Ordinance in 1950, which thereafter required 80,000 square feet per lot containing a single-family dwelling.  In this case, no dispute exists that, prior to the Declaration, the existing four homes on the Property that were employed as rental residential units represented a lawful, nonconforming use.  As the trial court noted, the use has not changed, expanded, or been abandoned, Township makes no allegation of nuisance, and eminent domain is not an issue.  *See* Trial Court Opinion at 8.  In fact, Township's designee confirmed that Township viewed the use of the Property's dwellings as complying with Township's zoning requirements as a lawful, nonconforming use.  *See* Transcript of February 21, 2020 Deposition of

Linda Csete (Csete Deposition) at 33; R.R. at 286a.[12]  Further, Township conceded that,

> had there been no conversion and the four dwelling units were still held in a single ownership as rental units, they would have retained their status as a lawful and nonconforming [use].

Trial Court Opinion at 5-6; *see also* Csete Deposition at 59; R.R. at 293a.[13]

Based on these facts and Township's concession, the trial court observed that

> [b]y agreeing that the continued existence and residential use of the four dwelling units on the Property is lawful, but arguing that their continued ownership as condominiums is unlawful, [] Township is attempting to improperly regulate ownership.

Trial Court Opinion at 8-9.  Further, the trial court observed that, instead of constituting a violation of the Zoning Ordinance by failing to comply with the minimum lot size requirements, "the pre[]existing inability [of the Property's four

---

[12] When asked, "Is it [] Township's position that the use of the [four dwelling units] as [] residence[s] is not in compliance with [Township's] zoning?" Township's designee answered, "It's in compliance as a non[]conforming use."  Csete Deposition at 33; R.R. at 286a.

[13] In response to a question of whether Township had any issue with the Unit Owners continuing to reside in their respective units as renters, Ms. Csete responded, "Not that I'm aware of."  Csete Deposition at 59; R.R. at 293a.

dwelling units] to satisfy minimum area requirements[14] is the very condition that affords the Property constitutional protections." *Id.* at 9.

We agree with the trial court. The use of the four homes on the Property as single-family residences preceded the enactment of the Zoning Ordinance and represented a lawful nonconforming use, as the parties acknowledge. This status provided the Property's owner with a vested property right that could not be extinguished in the absence of nuisance, abandonment, or eminent domain, none of which is involved in this case. The Declaration therefore represented a lawful change in the manner of ownership of the four homes, and Township's attempt to argue to the contrary lacks merit.

We disagree with Township's argument that the Declaration effected a subdivision of the Property into four new lots of land the lines of which, if they existed, would necessarily be on the ground surrounding each existing dwelling unit. The MPC and the Zoning Ordinance define a "subdivision" as

> the division or redivision of a lot, tract or parcel of land by means into two or more lots, tracts, parcels or other division of land including changes in existing lot lines for the purpose, whether immediate or future, of lease partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development.

Section 106 of the MPC, 53 P.S. § 10106; Zoning Ordinance § 27-202. Further, a declaration of condominium results in the creation of condominium units, not

---

[14] The Property is located in Township's FR-Farm Residential district, which requires a single-family detached dwelling located therein to have a minimum lot size of 80,000 square feet. *See* Trial Court Opinion at 3 n.5 & 5; *see also* SALDO § 27-405.

8

property lots. *See* 68 Pa.C.S. § 3103.[15] Thus, this Court has explained that "the creation of or conversion to a condominium does not constitute a subdivision of property for purposes of the application and approval process set forth in the MPC[.]" *Cunius v. Bd. of Assessment Appeals of Chester Cnty.*, 976 A.2d 635, 641 (Pa. Cmwlth. 2009); *see also Society Hill Towers Owners v. City of Phila.* (Pa. Cmwlth., No. 1432 C.D. 2019, filed Dec. 18, 2020),[16] slip op. at 10-13 (noting that condominium form of ownership did not create separate lots or parcels for zoning purposes). Additionally, the division of a parcel into separate tax parcels does not subdivide for zoning purposes the lot on which the separate tax parcels have been created. *See Society Hill Towers*, slip op. at 10-11; *see also DiCicco v. City of Phila. Zoning Bd.* (Pa. Cmwlth., No. 2625 C.D. 2015, filed May 10, 2017);[17] *Cunius*, 976 A.2d at 641 (noting that the creation of a condominium, while allowing the condominiums to be individually assessed for tax purposes, does not constitute a division of property for land development purposes).

Here, the trial court observed that no lots were created or changed when the Declaration was recorded. *See* Trial Court Opinion at 10. The trial court explained that the phrase "other division of land" in the definition of "subdivision"

---

[15] Section 3103 of the UCA defines "Unit" as "[a] portion of the condominium designated for separate ownership, the boundaries of which are described pursuant to section 3205(4) (relating to contents of declaration; all condominiums)." 68 Pa.C.S. § 3103.

[16] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

[17] *DiCicco* involved an attempt by a landowner to have a lot declared two separate properties based upon the fact that the lot had two separate tax parcel numbers. The lot was identified as a single lot, conveyed by a single deed, with two tax parcel numbers, and a single-family home straddling the two tax parcels. *DiCicco*, slip op. at 34-37.

is modified by the words "including changes in existing lot lines" that follow. *See id.* The trial court then concluded that "[t]he recording of the Declaration did not result in any 'other division of land including changes in existing lot lines . . .' because no lot lines were changed and no land was divided." *Id.* The trial court noted:

> The same lines defined the four dwelling units before and after the filing of the Declaration. Lots were not created; units were designated. Just as the units within an existing structure, such as an apartment building or a multi-unit townhome[] can be converted from rental units to condominium units upon the filing of a declaration, so here the existing, detached rental units were converted to condominium units. The entire Property was converted. There was no subdivision. The conversion of th[e] Property is no different than the conversation of any property with an existing structure, except that th[e] Property holds the status as a lawful, nonconforming use.

Trial Court Opinion at 6.

We agree with the trial court's assessment that the Declaration resulted in a conversion to condominiums, not a subdivision of the Property. Aside from the identification of the individual units by new tax parcel numbers, nothing changed on the Property upon the filing of the Declaration. No lot lines were drawn or changed; no structures were added or altered; no change in use of the Property's structures as single-family dwellings occurred. The filing of the Declaration effected only a change in the Property's ownership structure, nothing more. As such, the Declaration did not create a subdivision of the Property. *Society Hill Towers*; *Cunius*.

10

Likewise, the filing of the Declaration did not constitute land development under the MPC or the SALDO as it contemplated neither improvement nor subdivision of land. Under the MPC, "land development" consists of:

> (1) The improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving:
>
>> (i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or
>>
>> (ii) the division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.
>
> (2) A subdivision of land.
>
> (3) Development in accordance with [Section 503(1.1) of the MPC, 53 P.S. § 10]503(1.1).

Section 107 of the MPC, 53 P.S. § 10107. Similarly, the SALDO defines "land development" as:

> The improvement of one or more lots, tracts or parcels of land for any purpose involving a group of two or more principal permitted buildings, or the division or allocation of land between or among two or more existing or prospective occupants by means of, or for the purpose of, streets, common areas, leaseholds, building groups or other features.

11

SALDO § 22-202.

The Declaration does not contemplate, and the filing thereof did not amount to, land development. As the trial court aptly noted:

> There has been no improvement of the Property. CMI made no alterations to the dwelling units. No structures were added, subtracted or modified. Access has not been altered. Water and sewer have not changed. Density has not changed. [] Township has not come forward with any evidence of any effect a simple change in ownership will have on the public generally. [] Township does not contend that there has been development of the Property in accordance with [Section] 503(1.1) of the MPC. [] Township contends that there has been a subdivision; however, [] there has been no subdivision of [the] Property because no lot lines were changed. Because no land development was proposed in this conversion, the requirements of the MPC and SALDO do not apply.

Trial Court Opinion at 11.

Section 3106 of the UCA does not compel a different result. Section 3106 concerns local ordinances regarding condominiums and provides as follows:

> **(a) General rule.--**A zoning, subdivision, building code or other real estate use law, ordinance or regulation may not prohibit the condominium form of ownership or impose any requirement upon a condominium which it would not impose upon a physically identical development under a different form of ownership.

> **(b) Current law unaffected.--**Except as provided in subsection (a), no provision of this subpart invalidates or modifies any provision of any zoning, subdivision, land development, building code or other real estate use law, ordinance or regulation.

12

**(c) Status.--**The creation of a condominium pursuant to section 3201 (relating to creation of condominium) out of an entire lot, parcel or tract of real estate which has previously received approval for land development or subdivision, as those terms are defined in section 107 of the [MPC], or the conveyance of units in the condominium, shall not, in and of itself, constitute a subdivision or land development, for the purposes of subdivision, land development or other laws, ordinances and regulations.

**(d) Compliance with zoning regulations.--**

(1) Use of the condominium shall comply with zoning regulations applicable to the parcel of land or tract of real estate on which the condominium is created.

(2) Any person creating a condominium out of a vacant parcel or tract of real estate which has not been subject to subdivision or land development approval shall submit a copy of the condominium declaration and condominium plan to all municipalities in which the parcel or tract of real estate is located, unless the creation of the condominium is for an estate planning purpose of conveying units to family members or an entity controlled by family members so that the conveyance would not be subject to realty transfer taxes pursuant to Article XI-C of the act of March 4, 1971 (P.L. 6, No. 2), known as the Tax Reform Code of 1971.

(3) Construction of any structure or building on any unit or common facility shall be subject to the provisions of any zoning, subdivision, land development, building code or other real estate law, ordinance or regulation.

68 Pa.C.S. § 3106.

Regarding subsection 3106 (a) of the UCA, the general rule provided therein prevents discrimination against the condominium form of ownership for identical developments. Here, Township conceded that it would have no issue with the Property if it was to remain four single-family rental dwellings. *See* Trial Court Opinion at 13 n.11. Ergo, Township seeks to regulate Property – which remained a physically identical development after the filing of the Declaration – based on a change away from a single owner to a condominium structure of ownership. As the trial court observed, "Township's preference reflects an unlawful bias against the condominium form of ownership" that subsection (a) of Section 3106 of the UCA expressly prohibits. *Id.* at 13.

Additionally, the Declaration does not implicate subsection (b) of Section 3106 of the UCA because the Property remains in compliance with the Township's SALDO and Zoning Ordinance as a lawful, nonconforming use as discussed *supra*. Likewise, subsection (c), which states that the creation of a condominium out of a lot that had previous land development or subdivision approval does not constitute either land development of a subdivision, is not implicated by virtue of not specifically addressing the situation at hand. The failure of the UCA to directly address in subsection (c) the conversion of lots with existing lawful, nonconforming uses does not require that in the rule stated in subsection (c) (relating to other converted properties) somehow does not apply to the Property or otherwise strips the Property of its existing vested rights by virtue of its status as a lawful, nonconforming use, as discussed *supra*.

Subsection (d) of Section 3106 of the UCA is likewise inapplicable to this case. Subsection (d)(1) does not apply, as the Property complies with the requirements of the Township's Zoning Ordinance as a nonconforming use, as

14

discussed *supra*. Subsection (d)(2) addresses vacant land, which the Property is not. Subsection (d)(3) is inapplicable also, as the Declaration does not call for the construction of any structure or building on any unit or common facility of the Property.

For the foregoing reasons, we affirm the May 17, 2021 order of the trial court.


_____
CHRISTINE FIZZANO CANNON, Judge


Judge Dumas did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlestown Township, Pennsylvania,  :
             Appellant          :
                                  :
         v.                 :
                                    :
CMI Hartman, LLC, Sharyn L.     :
Gallagher, Monica Bell, Elizabeth Doan, :
Jeremy H. Gonzalez Ibrahim, Jr., and   :   No. 678 C.D. 2021
Elaine Gonzalez Ibrahim         :

## O R D E R

AND NOW, this 1st day of April, 2022, the May 17, 2021 order of the Court of Common Pleas of Chester County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge