L&S Partnership, LLC,     :
      Appellant  :
            :
    v.       :
            :
Philadelphia Zoning Board   :
of Adjustment and     : No. 1493 C.D. 2016
Pennsport Civic Association   : Argued: December 4, 2017


BEFORE: HONORABLE ROBERT SIMPSON, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY        FILED: December 27, 2017


    L&S Partnership, LLC (L&S) appeals from the Philadelphia County Common Pleas Court's (trial court) August 1, 2016 order affirming the Philadelphia Zoning Board of Adjustment's (ZBA) October 13, 2015 decision granting Pennsport Civic Association's (Protestant) challenge to a building permit issued by the City of Philadelphia (City), Department of Licenses and Inspections (Department) to the new owners of the property located at 1307 E. Moyamensing Avenue, Philadelphia (Property). There are four issues before this Court: (1) whether the ZBA had subject matter jurisdiction; (2) whether the ZBA erred when it concluded that a variance issued in 1960 (1960 Variance) permitting a three-family dwelling had been abandoned; (3) whether the Department properly issued the building permit to L&S based on the 1960 Variance; and, (4) whether the ZBA erred when it found the 1960 Variance had been abandoned despite a lack of substantial evidence demonstrating intent to abandon. After review, we affirm.

In December 2014, L&S purchased the Property, and on March 19, 2015 applied to the Department for a permit to perform interior alterations to the building located at the Property. L&S described the use of the building as a three-family dwelling. The Department issued the permit on April 8, 2015. The permit identified the Property's occupancy as a three-family dwelling and characterized the authorized work as "Level II alterations (no change of occupancy) to three (3)[-]family dwelling as per approved plans." Reproduced Record (R.R.) at 25a.

On May 8, 2015, Protestant appealed from the permit issuance to the ZBA alleging that the Department erred when it issued the permit because the Property had long been a single-family dwelling and the Philadelphia Zoning Code (Zoning Code) prohibits a three-family dwelling at the Property. Protestant also alleged that L&S had misrepresented the nature of the work in the building permit application, as alterations to an existing three-family dwelling.

On August 19, 2015, the ZBA held a hearing on the appeal. Protestant's president, Dr. James Moylan (Moylan), testified that he became aware of the matter from neighbors who reported seeing a permit authorizing the use of the Property as a three-family dwelling. Moylan stated that he contacted a City councilman who assisted him in gathering information about the Property. He discovered that the City's Office of Property Assessment listed the Property as a single-family dwelling, and he found no other documents that demonstrate that the Property had been recently used as a multi-family dwelling. He also reviewed the Property's multiple listing service (MLS) real estate listing that identified the home as a single-family home.

Two of the Property's neighbors also appeared as witnesses for Protestant. Pat Castineira (Castineira) testified that she has owned the house next door to the Property for twenty years and has resided there for the last twelve years. She explained that a man named Bill Wallace (Wallace) lived alone at the Property

2

during the time she owned her property. Wallace was in failing health and Castineira brought him food and cared for him. She further stated that she had been inside the Property on both the first and second floors and was unaware of any apartment units at the Property. She testified that she had last been in the Property approximately four years ago to care for Wallace, shortly before he died. According to Castineira, Wallace left the Property to another neighbor whose daughter and two children lived there until approximately one year before the hearing, when the Property was listed for sale.

Margaret Ann Szczepanek (Szczepanek) also testified that she was born, raised and currently lives three doors down from the Property and has been there for 48 years. Szczepanek stated that the Property has been used as a single-family home during the entire time she has lived in her home. She explained that she was in the Property as a child and that it was a single-family dwelling.

The City presented the testimony of Andrew Kulp (Kulp), the Department plans examiner, who reviewed L&S's application and issued the building permit. Kulp testified that prior to issuing the building permit, he checked the City's zoning archives and found a "zoning permit or use registration permit . . . from 1960 for a three-family dwelling that was granted by variance." R.R. at 75a. Kulp explained: "When you're doing a building review, if you're just verifying that the existing use of the property is whatever they're saying it is, the legal use, you don't necessarily look into the zoning classification or anything." R.R. at 81a-82a. However, he did acknowledge that: "I do do zoning and building. So if I get a building permit application for a use that has no history . . . I can do a zoning review and look into it." R.R. at 109a. He further clarified: "There's nothing in the current [Z]oning [Code] that says that a variance [is] los[t] if it's abandoned. If there was non[-]conforming, . . . I would have looked into the history of the property to make sure it was [a] continued use. But the current [Z]oning [C]ode does not say anything

about abandonment or zoning usage." R.R. at 82a-83a. Kulp approved the building permit based upon his belief that the 1960 Variance permitted a three-family dwelling. Notably, Kulp did not consider whether the Property's previous owner had abandoned the 1960 Variance under the prior Zoning Code (Prior Zoning Code).[1]

John Chan (Chan), owner of L&S, appeared pro se, and testified that L&S purchased the Property in December 2014, but he denied seeing the MLS listing prior to the purchase. Chan described the first floor of the Property as follows:

> [O]n [the] left-hand side is [a] living room and in the back is [a] kitchen. Then in the middle is a room. It might be a bedroom. And there is a bathroom right next to the – behind the kitchen. . . . First floor is – when you walk in, you turn left. There's a living room. In the middle room should be a bedroom.

R.R. at 118a-119a. Chan, however, acknowledged that the middle room could be a dining room. He continued his description:

> In the back is a kitchen. On the right-hand side of the kitchen there is a shower. There is a bathroom. . . . Then on the left-hand side you go up to the second floor. In the middle is a bathroom. And then in the front is a bedroom. In the back, we don't see the kitchen there, but we do see the pipe and the existing . . . sewage and stuff. . . . Third floor, apparently, somebody is building – putting up a closet on the right-hand side. So, they took steps off. [The previous owner was] doing some kind of cabinet.

R.R. at 119a. Chan explained that to get to the third floor, "[t]here is a ladder that is an opening." R.R. at 121a. According to Chan: "There's a kitchen, a bathroom and one bedroom. Everything indicate[s] to us there is an apartment on the third floor." *Id*.

---

[1] The Prior Zoning Code was repealed and replaced by the provisions of Bill No. 110845, approved December 22, 2011 and effective August 22, 2012.

On October 13, 2015, the ZBA voted to grant Protestant's appeal. The ZBA found that although a variance was granted in 1960 permitting the Property to be used as a three-family dwelling, "the three-family use was discontinued and . . . the Property ha[s] been used as a single[-]family dwelling for decades." R.R. at 176a. The ZBA also found that "[t]he evidence of record establishes that the three[-]family use approved by variance was discontinued decades ago – long before the August 22, 2012, effective date of the current [Zoning] Code." R.R. at 177a. The ZBA considered provisions of the Prior Zoning Code in effect before 2012 which provided that "any use authorized by the [ZBA], when discontinued for a period of three consecutive years, shall be considered abandoned and may not be resumed without further approval from the [ZBA]." R.R. at 177a. Based thereon, and the evidence presented at the hearing, the ZBA concluded, "the three-family use approved by the 1960 [V]ariance was discontinued more than three years prior to the effective date of the new [Zoning] Code and that the old [Zoning] Code's provisions regarding abandonment therefore applied." *Id*.

On October 27, 2015, L&S, through newly retained counsel, submitted a request for reconsideration and rehearing. On November 4, 2015, the ZBA denied L&S's request.

On November 12, 2015, L&S filed a notice of appeal to the trial court. On June 9, 2016, the trial court heard oral argument on L&S's appeal, and on August 1, 2016, the trial court affirmed the ZBA's decision. L&S filed a timely appeal to this Court.[2]

---

[2] This Court has explained:

> Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the [ZBA] committed an abuse of discretion or an error of law. An abuse of discretion is established where the findings are not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

# I. Jurisdiction

L&S first argues that the ZBA lacked subject matter jurisdiction to hear Protestant's appeal from the issuance of the building permit, and instead, Protestant should have filed its appeal with the Board of License and Inspection Review (L&I Review Board).

Section 5-1002 of the Home Rule Charter provides:

The Department . . . shall have the power and its duty shall be to perform the following functions:

(a)  Building Safety and Sanitation, Signs and Zoning.  It shall, except as otherwise specifically provided in this charter, administer and enforce all statutes, ordinances and regulations for the protection of persons and property from hazards, in the use, condition, erection, alteration, maintenance, repair, sanitation (including the maintenance and condition of plumbing and drainage facilities and the maintenance of sanitary conditions in housing accommodations), removal and demolition of buildings and structures or any parts thereof and the grounds appurtenant thereto, in the operation of equipment therein, and of outdoor signs. **Subject to the powers and duties of the [ZBA], the Department shall enforce compliance with zoning ordinances.**

(b)  Issuance of Licenses.[3] The Department shall:

(1)  Issue all forms for applications and receive all applications for any license;

(2)  Determine whether the applicant is properly entitled to the license which he seeks;

. . . .

---

*Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of City of Philadelphia*, 771 A.2d 874, 877 n.3 (Pa. Cmwlth. 2001) (citations omitted).

[3] Section 5-1001(a) of the Home Rule Charter defines "license" as "any license or permit required by statute, ordinance or regulation to be obtained from any officer, department, board or commission as a prerequisite to engaging in any activity or having possession of or using any property . . . ." Home Rule Charter, § 5-1001(a).

(4) If the application is refused, notify the applicant in writing of the refusal and the reasons therefor.

. . . .

The requirements and standards to be met by applicants for licenses shall be established by the Department in all cases in which the Department is responsible for the functions involved. In all other cases, the requirements and standards shall be certified to the Department by the officers, departments, boards or commissions for which the Department is acting. The Department, when in doubt concerning the interpretation to be placed on the certified requirements or standards, may consult the certifying officer, department, board or commission, but the Department shall make the decision whether the license should be granted.

. . . .

(d) Enforcement. The Department shall determine as the result of its inspections whether any person or the owner of any property is violating the conditions of any license, or whether or not any property owner is violating **any statute, ordinance or regulation which it is the duty of the Department to enforce.**

Home Rule Charter, § 5-1002 (emphasis added). Further, Section 5-1005 of the

Home Rule Charter describes the L&I Review Board appeal procedures:

The [L&I Review Board] shall provide an appeal procedure whereby **any person aggrieved by the issuance,** transfer, renewal, refusal, suspension, revocation or cancellation **of any City license** or by any notice, order or other action *as a result of any City inspection*, affecting him directly, **shall upon request be furnished with a written statement of the reasons for the action taken and afforded a hearing thereon by the [L&I Review Board].** Upon such hearing the Board shall hear any evidence which the aggrieved party or the City may desire to offer, shall make findings and render a decision in writing. The Board may affirm, modify, reverse, vacate or revoke the action from which the appeal was taken to it.

Home Rule Charter, § 5-1005 (bold and italic emphasis added).

In contrast, Section 4-607 of the Home Rule Charter describes the ZBA's powers and duties:

> (1)   In accordance with any statute or ordinance as now or hereafter in force, **the [ZBA] shall**:
>
> > (a)   **Hear and decide appeals in zoning matters where error is alleged in any** order, requirement, decision or **determination made by an administrative official in the enforcement of zoning ordinances**, regulations and maps;
> >
> > (b)   Hear and decide special exceptions to any zoning ordinance upon which the Board is required to pass;
> >
> > (c)   Authorize, upon appeal, in specific cases, such variance from the terms of any zoning ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.
>
> (2)   In the exercise of its powers, the [ZBA] may reverse or affirm, wholly or partly, or modify, the order, requirement, decision or determination appealed from, and make such order, requirement, decision or determination as ought to be made, and, to that end, it shall have all the powers of the officer from whom the appeal is taken.

Home Rule Charter, § 4-607 (emphasis added).  Further, Section 14-301(4) of the Zoning Code provides:

> (a)   General Authority.
>
> > The [ZBA] is established by § 3-911 of the Philadelphia Home Rule Charter and has those powers set forth in § 5-1006 [renumbered to § 4-607] of the Philadelphia Home Rule Charter and § 14-103(4) ([ZBA]).
>
> (b)   Authority for Final Action.

8

> (.1) The [ZBA] is responsible for final action regarding:
>
>> (.a) **Appeals pursuant to § 14-303(15) (Appeals).**
>>
>> (.b) **Variances. See § 14-303(8) (Zoning Variances).**
>>
>> (.c) Special exceptions. See § 14-303(7) (Special Exception Approval).
>
> (.2) The [ZBA] may impose conditions consistent with § 14-303(9) (Conditions on Approvals) on items § 14-301(4)(b)(.1)(.a) through § 14-301(4)(b)(.1)(.c) above.

Zoning Code Section 14-301(4) (emphasis added). Section 14-303(15)(a)(.1) of the Zoning Code states: "**Any** final order, requirement, decision, or **determination made by** [**the Department**] **pursuant to this Zoning Code may be appealed to the** [**ZBA**] by any person or organization affected by the decision or by any department or agency of the City." Zoning Code Section 14-303(15)(a)(.1) (emphasis added).

L&S contends that the L&I Review Board has **exclusive** jurisdiction over the appeal based upon Section 5-1005 of the Home Rule Charter because L&S sought and received a **building permit** from the Department.[4]   In support of its position, L&S cites *Berger & Montague, P.C. v. Philadelphia Historical Commission*, 898 A.2d 1 (Pa. Cmwlth. 2006); *East Hempfield Township v. Lancaster*, 273 A.2d 333 (Pa. 1971); and *Day v. School District of Darby Township*, 252 A.2d 638 (Pa. 1969).  However, these cases are inapposite.

---

[4] Section 5-1005 of the Home Rule Charter provides a right to appeal to the L&I Review Board from "**the issuance**, transfer, renewal, refusal, suspension, revocation or cancellation **of any City license** or . . . notice, order or other action **as a result of any City inspection** . . . ." Home Rule Charter, § 5-1005 (emphasis added).  The instant appeal did not arise as the result of a City inspection, but rather from a challenge to the recognition of an arguably invalid variance.  Thus, Section 5-1005 of the Home Rule Charter is not applicable.

In *Berger & Montague*, this Court held that an appeal from a Philadelphia Historical Commission decision, where no actual permit was issued, was properly brought before the L&I Review Board because the Philadelphia Code explicitly provided that any person aggrieved by the issuance or denial of any Commission issued permit may appeal to the L&I Review Board. Contrary to L&S's contention, this case does not stand for the proposition that the L&I Review Board has exclusive jurisdiction over an appeal from issuance of a building permit, but rather that the term "license" as used in the Home Rule Charter is to be construed broadly. *See Berger & Montague*, 898 A.2d at 6.

In *East Hempfield*, our Supreme Court considered whether a trial court had jurisdiction to determine the reasonableness of water rates fixed by a city, for users outside the city, or whether the Pennsylvania Public Utility Commission (PUC) had exclusive jurisdiction. Based on explicit statutory authority subjecting city-provided public utility service to the PUC's regulation and control, and other statutory authority requiring that such service outside the city limits also be subject to the PUC's regulation and control, the Supreme Court ruled that exclusive jurisdiction rested with the PUC. In the instant matter, there is no similar mandate directing that the Department or the L&I Review Board have exclusive control or jurisdiction. To the contrary, Section 5-1002(a) of the Home Rule Charter explicitly states: "**Subject to the powers and duties of the** [**ZBA**], the Department shall enforce compliance with zoning ordinances." Home Rule Charter, § 5-1002(a) (emphasis added).

Finally, *Day* involved a challenge to a school board resolution requiring integration of two elementary schools. There, the appellant argued that the trial court lacked jurisdiction because the Human Relations Commission had the exclusive right to hear the dispute pursuant to Section 12 of the Pennsylvania Human Relations Act.[5]

---

[5] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 962(b).

In the present case, there is no similar provision mandating exclusive jurisdiction in the L&I Review Board.

> Here, the trial court found that the ZBA had jurisdiction, explaining:
>
> The Philadelphia Home Rule Charter Section 5-1006(1)(a) gives the ZBA the power to 'hear and decide appeals in zoning matters where error is alleged in any order, requirement, decision or determination made by an administrative official in the enforcement of zoning ordinances, regulations and maps.' Furthermore, [Section 909.1 of the Pennsylvania Municipalities Planning Code (MPC),[6]] 53 P.S. § 10909.1(a), gives the ZBA 'exclusive jurisdiction to hear and render final adjudications . . . (5) applications for variances from the terms of the zoning ordinance. . . .' 53 P.S. § 10909.1(a) . . . .

Trial Court Supplemental Opinion (February 7, 2017) at 2-3, R.R. at 251a-252a. While this Court agrees that the ZBA had jurisdiction to address the instant matter, its jurisdiction is not based upon the MPC.[7] Our Supreme Court has held that "the MPC does not apply to the City of Philadelphia, which . . . is governed instead by the [First Class City] Home Rule Act[8] and the Zoning Code." *Scott v. City of Philadelphia Zoning Bd. of Adjustment*, 126 A.3d 938, 941 (Pa. 2015).

Rather, the ZBA's jurisdiction is founded in the Home Rule Charter and the Zoning Code. Importantly, Section 4-607(1)(a) of the Home Rule Charter describes the ZBA's jurisdiction as including "appeals in zoning matters where error is alleged in any order, requirement, decision or determination made by an administrative official in the enforcement of zoning ordinances, regulations and

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202. Section 909.1 of the MPC was added by the Act of December 21, 1988, P.L. 1329.

[7] "This court may affirm the decision of the trial court on any grounds." *Slusser v. Black Creek Twp. Zoning Hearing Bd.*, 124 A.3d 771, 772 n.1 (Pa. Cmwlth. 2015). Thus, "a correct decision will be sustained for any reason whatsoever, even though the reason given by the court below to sustain its decision was erroneous." *Keebler v. Zoning Bd. of Adjustment of City of Pittsburgh*, 998 A.2d 670, 673 (Pa. Cmwlth. 2010).

[8] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§ 13101–13157.

11

maps[.]" Home Rule Charter, § 4-607(1)(a). Similarly, Section 14-303(15)(a)(.1) of the Zoning Code authorizes appeals to the ZBA from "[a]ny final order, requirement, decision, or determination made by [the Department] pursuant to [the] Zoning Code . . . ." Zoning Code, § 14-303(15)(a)(.1).

Here, L&S placed the Property's **use** in issue when it characterized the Property as an existing three-family dwelling in the Building Permit Application. Thus, the matter involved a zoning issue, one that the Department was authorized under Section 5-1002 of the Home Rule Charter to enforce, but a matter clearly within the jurisdiction of the ZBA. Protestant appealed from the Department's building permit; Kulp, a Department employee and civil engineer, based the building permit's issuance upon his belief, in the exercise of his duties on behalf of the Department to "enforce compliance with zoning ordinances" under Section 5-1002(a) of the Home Rule Charter, that a variance existed which allowed the proposed building permit. Because Protestant's appeal before the ZBA involved an alleged error in a zoning matter (i.e., whether the building permit was properly issued for a three-family dwelling **in the absence of a new variance**), it was properly before the ZBA.[9]

## II. Abandonment of the 1960 Variance

Next, L&S contends that the ZBA erred when it considered the 1960 Variance permitting the three-family dwelling as though it were a non-conforming

---

[9] L&S inaccurately characterizes the instant action as an untimely appeal from the grant of the 1960 Variance. In fact, this appeal is based not on a challenge to the 1960 Variance's original issuance, but on the assertion that the validly issued 1960 Variance was abandoned during the effective period of, and in accordance with, the Prior Zoning Code. The question of whether the 1960 Variance had been abandoned did not become relevant until L&S sought the building permit to use the Property consistent with the 1960 Variance.

use and determined that the 1960 Variance was abandoned.[10]  Until August 22, 2012, the Prior Zoning Code provided: "**Any use** authorized by the [ZBA], when discontinued for a period of three consecutive years, shall be considered abandoned and may not be resumed without further approval from the [ZBA]."  Prior Zoning Code § 14-104(5)(c) (repealed effective August 22, 2012) (emphasis added).[11]

---

[10] Protestant contends that Section 14-305(3)(b) of the Zoning Code supports its position that the 1960 Variance was abandoned when it was not used.  That Section provides:

> A nonconformity that would not be permitted by this Zoning Code but that has been authorized through a variance or other action of the [ZBA], or that has been authorized by court order, **is not a nonconformity, so long as it complies with the terms of that authorization.**  This exception applies only to the portion of the property that was expressly approved by [ZBA] action or court order. If, for example, the [ZBA] granted a use variance on a lot that does not comply with applicable lot size requirements, the lot retains its non[-]conforming status despite the granting of the use variance.

Zoning Code, § 14-305(3)(b) (emphasis added).  Protestant argues that since the Property "no longer complie[d] with the terms of" the 1960 Variance, it lost its protected status. *Id*.  This court does not agree that Section 14-305(3)(b) of the Zoning Code mandates such an outcome.  Instead, we interpret Section 14-305(3)(b) of the Zoning Code to mean that so long as the authorized use is not exceeded, the authorized use will not be considered a nonconformity.  This Court rejects the interpretation that Section 14-305(3)(b) of the Zoning Code requires that if a property is used in a way that would be conforming absent the approval, the approved non-conforming use will be lost.

[11] Although Section 14-104 of the Prior Zoning Code was titled "Non-Conforming Structures and Uses," this Court concludes that subpart 5(c) addressed uses including those pursuant to a variance.  Section 14-104(5) of the Prior Zoning Code, titled "*Discontinued Use*[,]" provided:

> (a) **A non-conforming** [**use**] when discontinued for a period of three consecutive years or less may be resumed as the same non-conforming use and no other.
>
> (b) **A non-conforming use** when discontinued for a period of more than three consecutive years shall be considered abandoned and may not be resumed . . . .
>
> (c) *Any use* **authorized** by the [ZBA], when discontinued for a period of three consecutive years, shall be considered abandoned and may not be resumed without further approval from the [ZBA].

13

However, the ZBA issued its decision on October 13, 2015, after the repeal of Section 14-104(5)(c) of the Zoning Code.[12] Importantly, the current Zoning Code contains the following provision to address the transition from the Prior Zoning Code:

> Permits and approvals that are valid on the effective date of this Zoning Code shall remain valid until their expiration date. Projects with valid approvals or permits may be carried out in accordance with the development standards in effect at the time of approval, **provided that the permit or approval is valid and has not lapsed**[.]

Zoning Code, § 14-110(2)(a) (emphasis added).

Protestant presented evidence at the August 19, 2015 ZBA hearing demonstrating that the Property had long been used as a single-family home. Both

---

Prior Zoning Code, § 14-104(5) (repealed effective August 22, 2012) (bold and italic emphasis added). Because Subparts (a) and (b) specifically addressed discontinued "non-conforming use[s,]" it is clear that the general reference to "[a]ny use authorized by the [ZBA]" in Subpart (c) pertained to uses authorized by the ZBA other than "non-conforming use[s.]" *Id.*

[12] Section 14-303(10)(e) of the current Zoning Code, which pertains to the "[l]apse of [p]ermits and [a]pprovals," and specifically addresses abandonment of variances was not approved until December 8, 2015, after the ZBA issued its October 13, 2015 decision. That Section is substantially similar to Section 104(5)(c) of the Prior Zoning Code and states:

> Any use authorized by the [ZBA] by **variance** or special exception, **when discontinued for a period of three consecutive years, shall be considered abandoned and shall not resume unless a new permit is issued**, either as of right under then-existing Zoning Code provisions or by a new **variance** or special exception. A discontinuation of such a use may be evidenced by any one of the following:
>> (.1) Discontinuance of operations;
>> (.2) Removal of improvements necessary to the use;
>> (.3) Modifications to the property that make it unsuitable for the use;
>> (.4) Lapsing of permits or licenses necessary to operate the use; or
>> (.5) Failure to pay property taxes or taxes related to the use.

Zoning Code, § 14-303(10)(e) (emphasis added). Although the trial court did not cite to Section 14-303(10)(e) of the Zoning Code, it was in effect at the time the trial court issued its opinion.

Castineira and Szczepanek testified that the Property had been used as a single-family dwelling for many years, and described their familiarity with the Property. Based on Protestant's evidence, the ZBA found that during the period before August 22, 2012, the Property had not been used consistent with the 1960 Variance for three consecutive years, and thus in accordance with Section 14-104(5)(c) of the Prior Zoning Code, the 1960 Variance had been abandoned.

> This Court may not substitute its interpretation of the evidence for that of the [ZBA]. It is the function of a [ZBA] to weigh the evidence before it. The [ZBA] is the sole judge of the credibility of witnesses and the weight afforded their testimony. Assuming the record contains substantial evidence, we are bound by the [ZBA's] findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence.

*Tri-County Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 518 (Pa. Cmwlth. 2014) (citations omitted). After a thorough review, this Court concludes that the ZBA's findings are based on substantial evidence and we discern no error in the ZBA's analysis. Accordingly, pursuant to Section 14-110(2)(a) of the Zoning Code, the 1960 Variance was not valid under the current Zoning Code.[13]

---

[13] Having found that the 1960 Variance was abandoned under the Prior Zoning Code, we need not further address L&S's third argument that the Department properly issued the building permit to L&S based on the 1960 Variance.

We also reject L&S's assertion that the ZBA erred when it found that the 1960 Variance had been abandoned where there was no substantial evidence of an intent to abandon. This Court has explained that "[t]he effect of a zoning code provision . . . forbidding reestablishment after a period of discontinuance is that of the creation by discontinuance of a presumption of the owner or occupier's intent to abandon that use." *Smith v. Bd. of Zoning Appeals of City of Scranton*, 459 A.2d 1350, 1352 (Pa. Cmwlth. 1983). Thus:

> Failure to use the property for a designated time provided under a discontinuance provision is evidence of the intention to abandon. The burden of persuasion then rests with the party challenging the claim of abandonment. If evidence of a contrary intent is introduced, the presumption is rebutted and the burden of persuasion shifts back to the party claiming abandonment.

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

Senior Judge Colins concurs in the result only.

---

*Latrobe Speedway, Inc. v. Zoning Hearing Bd. of Unity Twp., Westmoreland Cty.,* 720 A.2d 127, 132 (Pa. 1998) (quoting *Pappas v. Zoning Bd. of Adjustment of the City of Philadelphia,* 589 A.2d, 675, 678 (Pa. 1991) (Zappala, J., concurring)).  The Prior Zoning Code § 14-104(5)(c) (repealed effective August 22, 2012) created the presumption of the previous owner's intent to abandon the 1960 Variance, and L&S did not present evidence to rebut the presumption.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

L&S Partnership, LLC,                      :
                        Appellant          :
                                           :
            v.                             :
                                           :
Philadelphia Zoning Board                  :
of Adjustment and                          :    No. 1493 C.D. 2016
Pennsport Civic Association                :


## O R D E R

AND NOW, this 27th day of December, 2017, the Philadelphia County Common Pleas Court's August 1, 2016 order is affirmed.


_____
ANNE E. COVEY, Judge